New Bedford *v.* New Bedford, Woods Hole &c. Steamship Authority.

CITY OF NEW BEDFORD & others *vs.* NEW BEDFORD, WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY & another.

Suffolk.   April 8, 1952. — July 9, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.   Public Agency.   Public Utilities.   Moot Question.   Declaratory Judgment.   Equity Jurisdiction,* Declaratory relief.   *Carrier,* Common carrier.   *Words,* "Person."

This court declined to define the obligation of the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority under St. 1948, c. 544, to furnish adequate transportation service by steamship to and from the city of New Bedford as prayed for in a suit in equity for a declaratory decree brought by the city following a vote by the Authority to suspend all its transportation service to and from the city for a specified period where it appeared that pursuant to a stipulation filed in the suit there had been no actual suspension of service and that the question of relief to the city from the threatened suspension had become moot through expiration of the specified period.

The question of the jurisdiction of the department of public utilities under G. L. (Ter. Ed.) c. 159; St. 1948, c. 544, over the transportation service to be provided by the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority might properly be determined in a suit for a declaratory decree under G. L. (Ter. Ed.) c. 231A where the department had issued an order relative to the service to be furnished and the Authority had indicated its intention not to comply with such order.   [247]

The department of public utilities has no jurisdiction under G. L. (Ter. Ed.) c. 159; St. 1948, c. 544, to supervise and regulate the transportation service furnished by the New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.   [250]

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 27, 1951.

The suit was reserved and reported by *Spalding,* J., without decision.

*Harry A. Lider,* City Solicitor, (*Louis A. Perras, Jr.,*

Assistant City Solicitor, with him,) for the city of New Bedford.

*W. Arthur Garrity, Jr.*, for the interveners.

*Robert G. Dodge*, (*Harold S. Davis* with him,) for New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.

*David H. Stuart*, Assistant Attorney General, for the Department of Public Utilities.

WILLIAMS, J. This is a bill in equity brought by the city of New Bedford under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, seeking a declaratory decree as to the obligation of New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority to furnish adequate transportation service by steamship to and from the said city and as to the jurisdiction of the department of public utilities "to deal with and enforce the obligation of the . . . Authority in respect of service." The defendants are the Authority and the department. A group of seventeen taxpayers and voters of the town of Falmouth were allowed to intervene as plaintiffs. The case was reserved and reported for the consideration of the full court by a single justice without decision, upon the bill, the demurrer of the department, and the answers of the department and of the Authority. G. L. (Ter. Ed.) c. 211, § 6.

The facts set out in the bill and not denied in the answers, and all facts well pleaded in the answers which are at variance with the allegations in the bill, must be taken to be true. *Joslin* v. *Boston & Maine Railroad*, 274 Mass. 551, 552.

The Authority is created "a body corporate" by special act of the Legislature, St. 1948, c. 544. Therein it is provided that the Authority "shall be deemed to be a public instrumentality for the purpose of this act," which purpose is stated in the preamble of the statute to be "to provide without delay adequate transportation facilities between New Bedford, Falmouth and the islands of Martha's Vineyard and Nantucket." The Authority, which consists of five members appointed by the Governor, is authorized to

purchase from Massachusetts Steamship Lines, Incorporated, a corporation which operates a steamship line between New Bedford, Falmouth, Martha's Vineyard and Nantucket, all of its property both tangible and intangible and to operate the said steamship line when purchased. The Authority may issue its bonds to provide for payment of the cost of the project and may fix rates of fare and charges adequate to meet the cost of service. Under certain stated conditions deficiencies in revenue may be compensated by payments from the treasury of the Commonwealth and the amount of such payments subsequently assessed on the city of New Bedford, the towns of Falmouth and Nantucket and the County of Dukes County in stated proportions.

It is alleged in the bill and admitted in the answers that the Authority was organized, that it purchased the property in question, and that in May, 1949, it began to operate the steamship line and to provide transportation facilities between New Bedford, Falmouth, and the Islands. On or about November 29, 1951, it "voted to discontinue and eliminate any and all transportation service to and from the port of the . . . city of New Bedford, for the period January 2, 1952, to April 26, 1952." "On December 18, 1951, a complaint was filed with the department of public utilities, under the provisions of G. L. (Ter. Ed.) c. 159, § 24, by twenty legal voters of said city which recited the foregoing decision of the . . . Authority to discontinue service to and from New Bedford during the period January 2, 1952, to April 26, 1952, and which requested that the department examine into the propriety of such decision and order the . . . Authority to continue to furnish the 'adequate transportation facilities' to the city of New Bedford which it was required to provide by the act establishing . . . [it]. Acting on the foregoing petition the department of public utilities on December 20, 1951, entered an order to the effect that the . . . Authority maintain unchanged the operating schedule in effect on December 15, 1951, over all its lines (including the service to and from

New Bedford) without modification until further ordered by the department . . . to avoid, as the department recited in its order, irreparable damage to the public. The department in the same order directed, under a provision of G. L. c. 25, § 4A, that a public hearing be held at the City Council Chamber, City Hall, New Bedford, on Tuesday, January 15, 1952, at 11:00 A.M., in order that the department might investigate the service of said Authority as provided for in G. L. c. 159, § 16. . . . The . . . Authority, by its counsel, has . . . informed the duly authorized representatives of the . . . [city of New Bedford] that it has determined not to comply with the said order for the reason that it believes and contends that the . . . commissioners have no jurisdiction to make such an order and are without authority to deal with the amount of service to be rendered by the Authority."

The Authority admits in its answer that the questions to which reference is made in the bill "ought to be determined" and joins in the plaintiffs' prayers for a declaratory decree. The department in its answer denies that any controversy exists "between all the parties named in" the bill but prays that this court "determine the matter of its jurisdiction and whether the department has been deprived of power by virtue of St. 1948, c. 544, as amended." The department filed a demurrer alleging "1. That the . . . [plaintiff] has not stated in its bill such cause as entitles it to any relief in equity. 2. That the court is without jurisdiction to entertain this bill. 3. That no actual controversy exists between the parties mentioned in this bill. 4. That the cause of action set forth in its bill is anticipatory in character and content, and unless and until the Authority discontinues service to the port of the city of New Bedford, the court would not be warranted in assuming jurisdiction in this matter. 5. The scope of the Authority's general powers is not to be determined by the general powers vested in the department of public utilities by G. L. (Ter. Ed.) c. 159."

On December 28, 1951, the Authority with the approval

of the court stipulated that until further order of the court the operating schedules of the Authority in effect on December 15, 1951, would be substantially maintained. We assume that following this stipulation there was no actual suspension of service to and from New Bedford. The period of the threatened suspension has now expired and the question as to what, if any, relief should be given the plaintiffs from such suspension of service has become moot. We think it inadvisable to proceed further by attempting to define generally the obligation of the Authority to furnish adequate transportation service to and from New Bedford. The standard of adequacy can have meaning only in its application to the facts of a particular case.

There remains, however, for consideration the alleged controversy between the Authority and the department of public utilities in reference to the jurisdiction of that department in general over the service to be provided by the Authority. The construction of St. 1948, c. 544, under which the Authority derives its power, and of G. L. (Ter. Ed.) c. 159, by virtue of which the department claims jurisdiction, is involved. The department has asserted jurisdiction by issuing its order of December 20, 1951. The Authority has indicated its intention to refuse compliance with that order. Both parties have a definite interest in the matter involved and "the circumstances attending the dispute plainly indicate that unless the matter is . . . [decided] such antagonistic claims will almost immediately and inevitably lead to litigation." *School Committee of Cambridge* v. *Superintendent of Schools of Cambridge*, 320 Mass. 516, 518. *Hogan* v. *Hogan*, 320 Mass. 658, 662. We think that under the authority of G. L. (Ter. Ed.) c. 231A, § 1, this controversy is properly before us for decision. See *Saint Luke's Hospital* v. *Labor Relations Commission*, 320 Mass. 467, 470. We are not required to await proceedings under G. L. (Ter. Ed.) c. 25, § 5, for a review of the present or any future order of the department. The demurrer of the department is overruled. *Carlton Hotel, Inc.* v. *Abrams*, 322 Mass. 201.

Without considering whether technically the city of New Bedford is a proper party to bring this bill, we deem it proper to consider the case on its merits. *Brownell* v. *Railroad Commissioners*, 163 Mass. 276, 281.

The Authority is a corporation established as an agency of the Commonwealth to exercise certain delegated governmental powers. This appears from § 7 of c. 544, wherein it is stated and provided that "The exercise of the powers granted by this act will be in all respects for the benefit of the people of the commonwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of the steamship line by the Authority will constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon the project or any property acquired or used by the Authority under the provisions of this act or upon the income therefrom, and the bonds and refunding bonds issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof), shall at all times be free from taxation within the commonwealth." See *Seaver* v. *Onset Fire District*, 282 Mass. 209, 213; *People* v. *Chicago Transit Authority*, 392 Ill. 77; *Webb* v. *Port Commission of Morehead City*, 205 N. C. 663; *Wells* v. *Housing Authority of Wilmington*, 213 N. C. 744, 749–750; *Sheldon* v. *Grand River Dam Authority*, 182 Okla. 24; *State* v. *Housing Authority of New Orleans*, 190 La. 710; *People* v. *Newton*, 106 Colo. 61, 68; *State* v. *Great Falls*, 110 Mont. 318, 328; *Nelson-Johnston & Doudna* v. *Metropolitan Utilities District*, 137 Neb. 871, 873–874; *Furlong* v. *Housing Authority of Newark*, 132 N. J. Eq. 341, 342; *Morrison* v. *Smith Bros. Inc.* 211 Cal. 36, 44; *Gaynor* v. *Marohn*, 268 N. Y. 417, 424–425. It is provided in c. 544, § 18, that "All other general or special laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the provisions of this act." The powers granted by the Legislature to the Authority as an agency of government are to be exercised free from the control of any

other governmental agency unless these powers are made subject to such control by the statute creating the Authority or by some other general or special law. The only restriction on the stated powers of the Authority is found in § 5 (c), which provides that the Authority is authorized and empowered "To fix, from time to time, such rates of fare and charges for service furnished or operated as in the judgment of its members are best adapted to insure sufficient income to meet the cost of the service, as hereinafter defined. Rates so fixed shall be and remain in effect until changed by the Authority unless the department of public utilities shall upon petition and after a public hearing disapprove them. Such disapproval, if any, shall not be retroactive in effect." To this limited extent the acts of the Authority are made subject to the control of the department. According to a familiar rule of statutory construction the grant of this specific power tends by implication to negative a legislative intent to vest in the department other or broader powers of supervision over the Authority. *McArthur Brothers Co.* v. *Commonwealth,* 197 Mass. 137, 139. *Boston & Albany Railroad* v. *Commonwealth,* 296 Mass. 426, 434. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40, 45. *Spence, Bryson, Inc.* v. *China Products Co.* 308 Mass. 81, 88. *Haines* v. *Town Manager of Mansfield,* 320 Mass. 140, 142–143. *Demos Brothers General Contractors, Inc.* v. *Springfield,* 322 Mass. 171, 174. *County of Bristol* v. *Secretary of the Commonwealth,* 324 Mass. 403, 406–407.

In G. L. (Ter. Ed.) c. 159, entitled "Common Carriers," on which the department relies as the source of its asserted jurisdiction, § 12 provides that the department of public utilities shall have general supervision and regulation of, and jurisdiction and control over, certain services including the transportation or carriage of persons or property by ships or vessels when furnished or rendered for public use within the Commonwealth, and all persons, firms, corporations, associations, and joint stock associations or companies furnishing or rendering such services. It is plain, we think,

that the power of supervision and regulation granted by c. 159 over services furnished or rendered by common carriers is intended to apply only to such services when furnished or rendered by the agencies therein specified. "It has been a general rule in our legislation that statutes passed for the regulation of the rights and liabilities of corporations are to be applied only to private or moneyed corporations and not to public or municipal corporations or quasi corporations" the purpose of whose organization is in the main political. *O'Donnell* v. *North Attleborough,* 212 Mass. 243, 245–246. *Linehan* v. *Cambridge,* 109 Mass. 212, 213. *Donohue* v. *Newburyport,* 211 Mass. 561, 566–569. *MacRae* v. *Selectmen of Concord,* 296 Mass. 394, 396. The word person, which by reason of G. L. (Ter. Ed.) c. 4, § 7, Twenty-third, may be held to include "corporations, societies, associations and partnerships," is not apt to describe a municipality. *Howard* v. *Chicopee,* 299 Mass. 115, 121. In our opinion the Authority is not one of the agencies the services of which the department is authorized to supervise and regulate under the provisions of c. 159. We think the only control that the department may exercise over the acts of the Authority imposed upon it by c. 544 is by disapproving the rates which the Authority may fix. A decree may be entered in conformity with this opinion.

*So ordered.*