ARMANDO PEREZ & others *vs.* BOSTON HOUSING
AUTHORITY & others.

Suffolk.   June 9, 1975. — July 10, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN,
& WILKINS, JJ.

*Housing.   Jurisdiction,* Housing.   *Boston Housing Authority.   Prac-
tice, Civil,* Parties.   *Commonwealth,* Financial matters.

The Legislature did not intend to include the Secretary of Commu-
nities and Development, or the Commonwealth, or any of its de-
partments or agencies, among the entities who were described in
G. L. c. 111, § 127N, as an "individual, trust or corporation, part-
nership, association, or other person," and a complaint by tenants
against an authority which owned and operated public housing
projects to enforce the State sanitary code therein could not be
maintained against State officials joined as parties defendant.
[336-341]

The substandard condition of units in projects of the Boston Housing
Authority as disclosed in a complaint by tenants led this court,
upon reversing the final decree as to the State defendants and dis-
missing the complaint as to them, to remand the case to the
Housing Court of the City of Boston for further proceedings in the
discretion of the judge as to the authority.   [341-344]

CIVIL ACTION commenced in the Housing Court of the
City of Boston on February 7, 1975.

The case was heard by *Garrity,* J.

The Supreme Judicial Court granted a request for
direct appellate review.

*Terence P. O'Malley,* Assistant Attorney General, for the Commissioner of Community Affairs & others.

*Gershon M. Ratner (Bruce E. Mohl & James E. Wexler* with him) for the plaintiffs.

*Kevin P. Feeley (Brian P. Shillue* with him) for Boston Housing Authority.

*Howard E. Cohen,* for Cambridge Housing Authority, amicus curiae, submitted a brief.

HENNESSEY, J. In this case we hold, as clearly required by the applicable law, that the Commonwealth has no duty to provide funds for the rehabilitation of certain property of the Boston Housing Authority (BHA). However, we emphasize the disturbing social implications of this holding (*infra,* part 2).

Certain appellants, namely the Commissioner of the Department of Community Affairs, the Secretary of Communities and Development, the Treasurer of the Commonwealth, and the Governor of the Commonwealth, appeal from a judgment (the "final decree") entered by a judge of the Housing Court of the City of Boston (Housing Court). These appellants are hereinafter referred to as the State defendants. We granted direct appellate review on application of all parties. We reverse the final decree and, for the reasons set forth in this opinion, remand the case for further proceedings in the discretion of the judge of the Housing Court.

Various tenants of the BHA filed a complaint in the Housing Court pursuant to G. L. c. 111, § 127H, to enforce the State sanitary code (see G. L. c. 111, § 127A) in public housing projects owned and operated by the BHA. The tenants requested the judge of the Housing Court to "enjoin . . . [the BHA] from failing to correct" defective conditions in the premises in which they and a class of approximately 40,000 persons live.

The tenants subsequently moved to join the State defendants. As their grounds for relief, the tenants alleged that since these State officials had authority under various provisions of G. L. c. 121B to decide whether to

rehabilitate the projects of the BHA, they were subject to liability under G. L. c. 111, § 127N, for the alleged sanitary code violations by the BHA.[1] The tenants also alleged that, for financial reasons, the BHA was unable by itself to rectify the sanitary code violations. Accordingly, the Housing Court was asked first to enjoin the State defendants from committing any of the remaining borrowing authority of either State or the BHA for the development of low income housing until the preparation and State approval of rehabilitation plans for housing projects owned and operated by the BHA. Second, the Housing Court was requested to order the State defendants to provide, from these State funds remaining to be borrowed, the moneys necessary for rehabilitating the BHA housing once such plans were prepared and approved.

A hearing on the requests for preliminary injunctive relief was held before the judge of the Housing Court. On the basis of the evidence presented at that hearing and collected by the judge in the course of visits to certain projects, the judge made findings concerning the existence and extent of sanitary code violations, vandalism, crime, and racial segregation in BHA projects. The judge also found that the BHA did not have the financial resources to correct the sanitary code violations.

The judge ruled that under G. L. c. 111, § 127N, the State defendants were liable for the sanitary code violations and would be required to provide the funding necessary for rectification. He then entered the final decree, which incorporated in its entirety his "Findings, Rulings, Opinion and Orders." The State defendants

---

[1] The tenants assert that the several State defendants are liable by the operation of various provisions of G. L. c. 111 (the "health" statute) and G. L. c. 121B (the "housing" statute). Specifically, they relate certain statutes, inter alia, to the various defendants as follows: BHA: G. L. c. 111, § 127H; G. L. c. 121B, §§ 1, 11, 26. The State defendants: G. L. c. 111, § 127N; G. L. c. 121B, §§ 26A, 31, 34, 41; G. L. c. 6A, §§ 4, 8.

were enjoined from committing, with limited exceptions, approximately $105,000,000 of the borrowing authority not yet committed under G. L. c. 121B, §§ 26A, 34, 41, for the development of low income housing on a Statewide basis. The decree, with exceptions not here material, froze the uncommitted amount of borrowing authority for use solely to rehabilitate the existing projects of the BHA.[2] The State defendants then filed this appeal.

1. The State defendants do not dispute that the plaintiffs have satisfied, at least with respect to the BHA, all the requirements for a cause of action under G. L. c. 111, § 127H. Included in this area of apparent agreement is the assertion that remedies for violations of the sanitary code are available to tenants in public housing accomodations as well as to those in private dwellings. See *West Broadway Task Force, Inc.* v. *Commissioner of the Dept. of Community Affairs,* 363 Mass. 745, 752-753 (1973).

Additionally, from representations made by counsel in oral argument before this court, it is clear that the plaintiffs do not seriously contend that any obligation can be found on the part of the Governor or the State Treasurer as to the issues now before us because of the limited statutory involvement of these two officials with respect to low income housing. See G. L. c. 121B, § 26A. It is also established that the Commissioner of the Department of Community Affairs is not a proper party defendant because that position has been abolished by St. 1975, c. 163, effective April 30, 1975. The supervision and control of the Department of Community Affairs is now vested in the Secretary of Communities and Development (the Secretary).

---

[2] The direct effect of the judge's orders, if affirmed, would be to divert to the rehabilitation of BHA property moneys which had previously been earmarked by the Secretary of Communities and Development for use in procuring additional low income housing in certain projects in other parts of the Commonwealth.

Thus, the Secretary is the sole State defendant whose liability need be considered. The issue is whether the Secretary is liable for violations of the sanitary code in buildings controlled by the BHA. Essentially, of course, the issue is whether the Commonwealth has such liability. We hold that it does not.[3]

It is true that the Commonwealth, through the Secretary, has certain supervisory authority over local housing authorities and is empowered to oversee most phases of the operations of local housing authorities. To that end the Secretary is given various powers to approve or disapprove the activities of these authorities together with rule making power and power to demand reports and other information. G. L. c. 121B, §§ 1, 11, 29, 30-32, 34, 35, 37. G. L. c. 23B, §§ 1, 3. See *West Broadway Task Force, Inc.* v. *Commissioner of the Dept. of Community Affairs*, 363 Mass. at 748. Nevertheless, the tenants primarily rely, as did the judge below in his rulings, on the provisions of G. L. c. 111, § 127N, to establish the Commonwealth's liability. Indeed, that appears to us to be the only statutory source from which

---

[3] The complaint here seeks to establish statutory responsibility centering in particular on G. L. c. 111, §§ 127H, 127N. There is no assertion, nor does the record disclose grounds for asserting, that the court should exert judicial control over agency action under equity principles. We have delineated the limited circumstances which make such control appropriate in the case of *West Broadway Task Force, Inc.* v. *Commissioner of the Dept. of Community Affairs*, 363 Mass. at 750-751: "The question of the proper occasions for judicial intervention upon the suit of affected tenants would remain. A challenge to agency action as being unconstitutional, or offensive to a specific statutory command or prohibition, would be such an occasion. A charge of arbitrary or capricious action by the agency, like a charge that the agency was exceeding its 'jurisdiction,' could also present a plausible situation for appeal to an equity court. Even in a field in which the agency is acknowledged to have latitudinous discretion, a court would not be excluded if the agency appeared to have been actuated by clearly inapposite or unreasonable considerations. And it may be granted that for purposes of the availability of judicial review, inaction by an agency over a period of time could count as the equivalent of a final refusal to act."

the tenants can begin to draw a relevant argument in support of their position.

General Laws c. 111, § 127N, inserted by St. 1974, c. 681, states, in pertinent part, that a tenant petitioning a court of competent jurisdiction to enforce the sanitary code may join as a party defendant not only the owner of the premises but also "any individual, trust or corporation, partnership, association, or other person who, acting alone or with another, has the authority to decide whether to rehabilitate, or sell or otherwise dispose of the premises, with or without record title or recorded interest." If the owner is unable for financial reasons to provide effective relief, "[t]he owner and any person so joined shall be jointly and severally liable for taking any action or paying any damages ordered by the court."

It is plain that the Secretary cannot be held responsible under this statute unless the Secretary (1) is an "individual, trust or corporation, partnership, association, or other person," within the meaning of the statute, and (2) has the authority to decide whether to rehabilitate or sell or otherwise dispose of the premises. We hold that the Legislature did not intend to include the Secretary, or the Commonwealth, or any of its departments or agencies, among the entities described in § 127N as an "individual, trust or corporation, partnership, association, or other person."

On this issue, the State defendants' arguments, which are convincing, are that the judicial imposition of liability on the Secretary or any other representative of the Commonwealth is contradicted both by the ordinary meaning of the language used in § 127N, and by the legislative intent otherwise demonstrated.

The words employed by the Legislature are plainly inappropriate to identify the State or any of its agencies. By contrast, the State defendants point out, and we think persuasively, that when the Legislature did in fact determine to apply public health regulations, enacted pursuant to G. L. c. 111, to State agencies as well as other entities,

it expanded the coverage from "[a]ny municipality, corporation or person" (§ 142A), and "any person, corporation, or political subdivision" (§ 142B), to include "[a]ll departments, agencies, commissions, authorities and political subdivisions" (§ 142E). See *Boston* v. *Massachusetts Port Authy.* 364 Mass. 639, 653 (1974).

Further, in construing the language employed, we recognize that "[i]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof." *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962). That the Secretary is an individual does not obscure the fact that he is a party to this suit only in his official capacity and that the essence of the judge's order in this case would impose liability on the Commonwealth through the Secretary and require the expenditure of funds of the Commonwealth.

The legislative intent as inferred from other sources is consistent with the plain language of c. 111, § 127N. No provision of G. L. c. 121B setting forth various governmental responsibilities with respect to public housing subjects the Commonwealth or its agencies to liability for sanitary code violations under G. L. c. 111. By contrast, the responsibilities of the BHA or any housing authority under the sanitary code can be said to be specifically provided for in G. L. c. 121B, § 28. Cf. *Cameron* v. *Zoning Agent of Bellingham*, 357 Mass. 757, 761 (1970). Further, the language of c. 121B, § 17, provides in effect a specific disclaimer of liability by the Commonwealth[4] (except for the guaranteeing of bonds as

---

[4] General Laws c. 121B, § 17, inserted by St. 1969, c. 751, § 1, reads as follows: "No bond, note or other evidence of indebtedness executed or obligation or liability incurred by an operating agency shall be a debt or charge against the commonwealth or any political subdivision thereof other than such agency. Nothing in this chapter shall be construed to obligate the commonwealth, or any political subdivision thereof other than the applicable operating agency, or to

provided in c. 121B, §§ 34, 41). Also significant is G. L. c. 111, § 127J, inserted by St. 1965, c. 898, § 3, which authorizes the Department of Public Health to supply financial assistance to remedy defective conditions but only in "such sums as may be appropriated therefor." This clear and direct provision is inconsistent with the tenants' argument that the Legislature also intended, by subtle implication in § 127N, to alter in any manner the power of State authorities to use funds under c. 121B.

All of this reasoning supports a conclusion that the Legislature did not intend to establish liability on the part of the Commonwealth or its departments in enacting the provisions of § 127N. Rather it appears that the Legislature in this section was providing against the possibility that the owners of private rental property might realize personal financial gain while at the same time screening themselves from responsibility for the repair of defective housing.

We have said that liability of any State defendant cannot be established under G. L. c. 111, § 127N, unless it is shown that the defendant is both an entity described within that section and "has the authority to decide whether to rehabilitate" the housing project. Since we hold here that the State defendants are not among the described entities, it is not necessary for us to reach the

---

pledge its credit, to any payment whatsoever to any operating agency or to any creditor or bondholder thereof, nor shall anything therein contained be construed as granting to any operating agency any exemption from taxation except as expressly provided therein or to render the commonwealth, or any political subdivision other than such agency liable for any indebtedness or liability incurred, acts done, or any omissions or failures to act, or any such agency." The tenants argue that the "disclaimer" as found in § 17 is limited in terms to c. 121B, and is inapposite to this case, because of the words "'[n]othing in this chapter'" quoted above, and because the provision on which the tenants rely to establish liability (c. 111, § 127N) is not included in this chapter. The weakness of this argument lies in the fact that the position of the tenants clearly must rely in part on the provisions of c. 121B in so far as that statute establishes powers and responsibilities of the Commonwealth.

"authority" issue. Nevertheless, we note that the State defendants offer arguments that they have no such authority. They observe that the tenants' arguments, and the judge's rulings, necessarily rely in part on certain funding provisions of c. 121B, viz. §§ 34 and 41. They argue that these funding provisions do not apply to the rehabilitation of existing projects but contemplate the expansion of the housing stock through construction and purchase.

The State defendants concede that there may be a limited State authority in c. 121B, § 26 (j), to rehabilitate local projects. These provisions are related to such limited funding as to appear unimportant in the context of this case. In any event, the tenants do not rely on § 26 (j), and the State defendants cite it as further proof that the Legislature did not intend to establish the "open-ended" State authority and duty for which the tenants contend.

There is also no necessity for us to reach the State defendants' further assertion that this is essentially a suit against the Commonwealth and is therefore barred by the doctrine of sovereign immunity.

2. The result we have reached is clearly required by the law. Nevertheless, the ramifications of our decision are disturbing.[5] The Commonwealth cannot be required to expend funds for rehabilitation of BHA property; yet hundreds, and probably thousands, of tenants are living in substandard units which the judge has characterized as "not decent." Without adequate funding, the alternatives appear equally unacceptable: either the tenants continue to live in conditions which are unlawful under the sanitary code, or the substandard units are to be

---

[5] The result is no less disturbing, even though the moneys, which we have by this decision freed from the restraint of the injunction imposed by the judge, presumably will now be spent in the building and acquisition of low income housing in the State. This affords no relief for the appalling condition of the BHA properties.

withdrawn from use, with the accompanying probability of many persons left homeless.

Conditions in certain BHA projects are such as to justify the use of the adjectives "massive" and "critical." The judge has found that the great majority of the residential units owned and operated by the BHA, as well as the buildings themselves, "are not decent, nor are they safe and nor are they in compliance with the provisions of the State Sanitary Code." A substantial percentage of the rental units are unoccupied, with vacancies in one project as high as sixty per cent. The background is one of numerous crimes of violence and widespread vandalism. Vandalism has virtually destroyed hundreds of apartments, and large segments of the buildings themselves. The judge found that the residents did not perpetrate the vandalism.

These conditions directly affect a substantial percentage of the residents of Boston. The BHA owns and operates nineteen Federally aided developments for families of low income with a total of 10,348 dwelling units (seventy-three per cent of such units in the Commonwealth), ten State aided developments for families of low income with a total of 3,681 units (twenty-seven per cent of such units in the Commonwealth), twenty-five Federally aided developments for elderly persons of low income with a total of 2,613 units (ninety-four per cent of such units in the Commonwealth), and two State aided developments for elderly persons of low income with a total of 160 units (sixty per cent of such units in the Commonwealth). The BHA also leases from private landlords 2,655 dwelling units pursuant to various Federal programs (ninety-seven per cent of such units in the Commonwealth), and fifty-nine units pursuant to various State programs (three per cent of such units in the Commonwealth). Residents living in BHA owned and leased housing projects comprise in excess of ten per cent of the total population of Boston.

With these conditions in mind the question remains as to the proper disposition of this case, aside from the fact that the complaints must be dismissed as to the State defendants. Jurisdiction of the subject matter (violations of the sanitary code) resides in the Housing Court, of course, and that court's powers embrace such matters, relating to both the problem and the cure of sanitary code violations, as vandalism, crime, alleged mismanagement, and the marshalling of tenant cooperation. Furthermore, the Housing Court judge has demonstrated, in his considerable efforts up to this point, both sympathetic understanding and competence directed toward the special problems of the BHA. Therefore, it is appropriate for us to remand the case to the judge below for such further proceedings, as to the BHA only, as he deems appropriate in the circumstances.

The judge entered a final decree, but it is clear from representations of counsel before us that the judge may well intend to retain jurisdiction of the matter. Apparently the preparation of plans for solution of some of the BHA problems has been ordered by the judge and we understand that a master has been or will be appointed to that end.

Of course, the future proceedings under this complaint can be binding only on the BHA. It is an understatement to say that our decision to order the dismissal of the complaint as to the State defendants limits the utility of further proceedings, since adequate funds to implement certain court orders are not available. As the judge found, "B.H.A. is unable for financial reasons to comply with orders made by this Court in this case pursuant to G. L. c. 111, § 127H to maintain its developments in compliance with the State Sanitary Code and to provide security to its tenants." Nevertheless, further proceedings, despite the lack of availability of State funds as decided in this case, may result in appropriate orders against BHA related to the sanitary code. See G. L. c. 111, § 127H. Moreover, additional proceedings may

well offer guidance and precedent for future cases involving not only mandatory action by BHA, but also discretionary action by the legislative and executive branches.

3. The final decree of the Housing Court of the City of Boston is reversed as to the State defendants and the complaint is dismissed as to those defendants. The injunction against the State defendants is vacated. The case is remanded to the Housing Court for further proceedings as to the BHA in the discretion of the judge and consistent with this opinion.

*So ordered.*