EDWARD M. KILBANE[1] *vs.* SECRETARY OF HUMAN SERVICES
& others.[2]

Suffolk.  April 22, 1982. — August 3, 1982.

Present: BROWN, PERRETTA, & KASS, JJ.

*Statute*, Construction.  *Commonwealth*, Liability for statements.  *Words*,
   "Person."

The Commonwealth is not a person within the meaning of G. L. c. 266,
   § 91, dealing with false advertising, and thus a complaint seeking to
   enjoin the Secretary of Human Services and other public officials from
   publishing and distributing certain informational material allegedly in
   violation of the statute was properly dismissed.  [286-290]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 21, 1981.

A motion to dismiss was heard by *Fine*, J.

*Susan Tuchman (David H. Mendes* with her) for the
plaintiff.

*Bruce E. Mohl*, Assistant Attorney General, for the de-
fendants.

KASS, J.  Acting under G. L. c. 266, § 91, as amended
through St. 1963, c. 222, which deals with false advertising,
the plaintiff sought to enjoin the defendants from publish-
ing and distributing certain informational material.  A
Superior Court judge allowed a motion to dismiss the com-
plaint for failure to state a claim for which relief can be
granted (Mass.R.Civ.P. 12[b][6], 365 Mass. 755 [1974]) and
judgment entered accordingly.  We affirm.

The basis for dismissing the complaint was that the Com-
monwealth may not be made to answer to actions under G. L.

_____

   [1] Kilbane brought the action, as next friend, on behalf of several men-
tally retarded individuals in the care of the Commonwealth.

   [2] The Director of the Client Trust Fund Project, and the Commissioner
of Mental Health.

c. 266, § 91. That statute, inserted by St. 1916, c. 149, makes it a misdemeanor[3] for "Any person who, with intent to sell or in any way dispose of merchandise, securities, service, or anything offered by such person, directly or indirectly to the public for sale or distribution, or who, with intent to increase the consumption of or demand for such merchandise, securities, service or other thing . . . publishes, disseminates, circulates or places before the public, or causes . . . to be . . . published, disseminated, circulated . . . within the commonwealth, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet or letter . . . an advertisement of any sort . . . which . . . contains any assertion, representation or statement of fact which is untrue, deceptive or misleading . . . ." By St. 1963, c. 222, the Attorney General or any aggrieved party became authorized to bring a civil action to enjoin a violation of the statute.

In order to place liability on the Commonwealth, the plaintiff fixes on the words "any person" with which § 91 begins. By definition in G. L. c. 4, § 7, Twenty-third, the word "person" for purposes of construing the general laws "include[s] corporations, societies, associations and partnerships" and, therefore, does not describe the Commonwealth or its subdivisions. *Howard* v. *Chicopee*, 299 Mass. 115, 121 (1937). *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962), and cases cited. Apart from the statutory context given "person" by G. L. c. 4, § 7, the court said in *Hansen* that "[i]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof." That the action here is brought against individual employees of the Commonwealth "does not obscure the fact that [they are parties] only in [their] official capacit[ies] and that" any order of court would impose lia-

---

[3] Fines of not less than $500 nor more than $1,000 may be imposed. See St. 1958, c. 217, § 1, which raised the penalty from not less than $10 nor more than $500.

bility on the Commonwealth through them. *Perez* v. *Boston Housing Authy.*, 368 Mass. 333, 339, appeal dismissed, 423 U.S. 1009 (1975). See also 3 Sands, Sutherland Statutory Construction § 62.01 (4th ed. 1974).

With some ingenuity, the plaintiff seeks to place his claim within an exception to this general canon of statutory construction, which some jurisdictions have adopted. That exception is that "the sovereign is embraced by general words of a statute intended to prevent injury and wrong." *Nardone* v. *United States*, 302 U.S. 379, 383-384 (1937) (Federal officers were "persons" within the meaning of the Communications Act of 1934 and, therefore, required to adhere to restrictions on use of wiretaps). See also *Ruiz* v. *Estelle*, 503 F.Supp. 1265, 1378-1379 (S.D. Tex. 1980), modified on other grounds, 650 F.2d 555 (1981), and 666 F.2d 854 (1982) (prison officials were "persons" required to adhere to work-safety and sanitation codes). Apparently if the wrong to be checked is of sufficiently searing quality, the State's consent to be sued will be implied. See also *State* v. *Piazza*, 66 Miss. 426, 430-431 (1889); *In re Public Parking Authy. of Pittsburgh*, 366 Pa. 10, 13-14 (1950). Contrast *Woodbridge* v. *Worcester State Hosp.*, 384 Mass. 38, 42 (1981) (statute [G. L. c. 123, § 23] establishing rights for patients in State mental institutions does not render the Commonwealth answerable in damages for a denial of those rights), and *Grenier* v. *Hubbardston*, 7 Mass. App. Ct. 911 (1979) (statutes regulating trade and industry are ordinarily construed not to apply to the Commonwealth or its political subdivisions).

To the extent that the *Nardone* exception might, in extraordinary circumstances, be invoked in Massachusetts, the statute involved in this case and the facts complained of do not provide the occasion.[4] The targets of this action are in-

---

[4] In the only case that has come to our attention, *Attorney Gen.* v. *Woburn*, 322 Mass. 634, 637 (1948), "whoever," which has the same statutory definition as "person," G. L. c. 4, § 7, Twenty-third, was held to include "municipalities" in the nonpenal provisions of a statute designed to protect the public health.

formational materials sent by the Office of Human Services (the Office) to relatives and guardians of residents (the residents) of State schools and regional centers for the mentally retarded. Effective January 1, 1981, the residents, by reason of the enactment of St. 1980, c. 329, §§ 44-51, became subject to full charges for their care unless they were — or became — eligible for Medicaid benefits. Becoming eligible for Medicaid required divestiture by residents of personal assets in excess of $2,000. See generally G. L. c. 118E, § 10; 106 Code Mass. Regs. 325.060 (1978).

In order to achieve divestiture without loss of the benefit of the assets, the Office negotiated with a bank to serve as financial trustee under a model form of irrevocable trust. Under that form there would be a personal trustee who would act as a cotrustee with the financial trustee to manage the resident's assets for his benefit. The trust proposal was referred to by the Office as the Client Trust Fund Project. The informational materials about which the plaintiffs complain were distributed to explain the purpose of the Client Trust Fund Project, how the trust device worked, its advantages and disadvantages, and various methods of divestiture of assets.

All that had nothing to do with the objectives of G. L. c. 266, § 91, which was aimed squarely at mendacious advertisers in the world of commerce. The origin of § 91 was a model statute published in 1911 by a trade journal of the advertising industry called Printer's Ink. Report of the Legislative Research Council Relative to Unfair Advertising and Related Practices, 1961 House Doc. No. 3060, at 18-19. So many States adopted the substance of the model statute that it became known as the Printer's Ink Act. *Id.* See also Note, Statutory Attacks on Deceptive Advertising, 43 Harv. L.Rev. 945 (1930). Massachusetts adopted the Printer's Ink Act by St. 1916, c. 149 which altered the model text only (albeit significantly) by adding a requirement of scienter. It is apparent from this history that the focus of the statute was the marketplace. When, in 1961, the Legislature reviewed the effectiveness of G. L. c. 266, § 91, it spoke of concern

about losses suffered by the public "through advertising frauds and other advertising and business chicanery." 1961 House Doc. No. 3060, at 14. There is no reason to suppose that the Legislature intended a statute enacted to control the excesses of the pitchman to extend to governmental communications.

The Superior Court judge was right when she ruled that G. L. c. 266, § 91, "[cannot] be construed so as to provide civil liability on the part of the Commonwealth."

*Judgment affirmed.*