## COMMONWEALTH vs. KEVIN VOIGHT.

No. 89-P-1365.

Dukes County. March 9, 1990. - July 5, 1990.

Present: WARNER, C.J., KASS, & FINE, JJ.

*Telephone. County*, Employees. *Words*, "Person."

Four telephone calls placed by the same person within a half-hour period in the early morning to a police dispatcher, requesting assistance in obtaining taxicab service and registering a complaint about the absence of taxicab service which, the caller claimed, taxicab companies were required to provide did not constitute a violation of G. L. c. 269, § 14A, inasmuch as the dispatcher who answered the calls in her official capacity was not, in the circumstances, a personal object of the calls and the municipality that sought the criminal complaint was not a "person" for purposes of the statute. [771-774]

COMPLAINT received and sworn to in the Edgartown Division of the District Court Department on December 30, 1988.

On appeal to the jury session the case was tried before *Charles E. Black*, J.

*Ellen B. Kaplan* for the defendant.

*Russel J. Wilson*, Assistant District Attorney, for the Commonwealth.

KASS, J. It is no easy task to determine which party in this insular prosecution is the more petulant and stubborn. The legal position of those parties is more clear. Edgartown wrongly charged the defendant Kevin Voight with violating G. L. c. 269, § 14A, which punishes making telephone calls solely to harass, annoy, or molest, and a judge of the District Court erroneously denied a motion for a required finding of not guilty. Voight was found guilty by a jury-of-six.

Some time after 3:00 A.M., Voight, a head waiter and assistant manager at Andrea's Restaurant in Edgartown, com-

pleted his work and attempted to summon a taxi to take him home, approximately one mile away. He reached only telephone answering machines which announced the availability of cabs at 8:00 A.M. Thereupon Voight phoned the police department and again encountered a taped message. This one instructed him to dial 911 in case of an emergency. The night was cold and Voight persuaded himself that his situation rose to the dignity of an emergency. At 3:22 A.M., Voight phoned 911 and spoke with Shirley Leighton, a dispatcher for the County of Dukes County sheriff's department. Voight requested that Leighton assist him in obtaining taxi service. Informing Voight that "we were not a taxi service, we were an emergency center and did not call taxis for anyone," Leighton offered to dispatch a police officer, Antone Bettencourt, to the restaurant.

Officer Bettencourt arrived at the restaurant within minutes. Voight voiced his displeasure at being unable to obtain taxi service. Officer Bettencourt generously offered to escort him to his home in a police cruiser, an offer which Voight declined. Voight gave it as his understanding that it was a condition of taxi cab licensure in Edgartown that at least one company be on call for twenty-four hours on any particular day. As Officer Bettencourt withdrew to his cruiser in an attempt to locate a taxi, Voight, for the second time, (at 3:38 A.M.) phoned Leighton via the 911 emergency number. He reiterated his desire to be delivered to his home in a taxi, notwithstanding Officer Bettencourt's offer. Leighton again explained that the police department was unable to be of assistance in obtaining a taxi for him. Voight's call, however, brought Officer Bettencourt back into the restaurant. He instructed Voight not to dial 911 again. After advising Voight that he was the only officer who would be dispatched to handle the complaint, and that he was trying to locate a taxi for Voight, he returned to his police cruiser. Undeterred, at 3:49 A.M., Voight phoned to Leighton his third request for a taxi. Officer Bettencourt once again returned to the restaurant, informed Voight that there were no available taxis and renewed his offer, making it his third, to give Voight a ride

home in the police cruiser. Predictably, Voight declined and phoned Leighton at 3:53 A.M., a fourth and final time. He requested that his frustrated attempt to obtain a taxi be reported to the board of selectmen and, particularly, that a record of his calls that morning be maintained. He also let it be known that the chairperson of the board of selectmen "put [him] up to this." This holds some significance because the Edgartown selectmen rely on written complaints to monitor compliance by taxi companies with the requirement of having twenty-four hour service available. Determined to be transported to his home in a taxi or not at all, Voight spent what was left of the morning on a couch in the restaurant.

General Laws c. 269, § 14A, as appearing in St. 1978, c. 379, § 3, reads in pertinent part: "Whoever telephones another person . . . repeatedly for the sole purpose of harassing, annoying or molesting such person . . . whether or not conversation ensues, . . . shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than three months, or both." The statute initially requires that, for a conviction, a defendant must telephone another "person." The complaining party, i.e., the putative person, in this case is Edgartown, which filed its complaint through its police chief. General words such as "persons" will not customarily be construed to include the Commonwealth or any of its political subdivisions. *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962). *Perez* v. *Boston Hous. Authy.*, 368 Mass. 333, 339 (1975). *Kilbane* v. *Secretary of Human Servs.*, 14 Mass. App. Ct. 286, 287 (1982).

Moreover, by definition, in G. L. c. 4, § 7, Twenty-third, the word "person," as it is used throughout the General Laws, is defined to "include corporations, societies, associations and partnerships." Notably absent from the definition provided by the General Laws are governmental agencies, municipalities, or municipal corporations. Contrast Colo. Rev. Stat. § 2-4-401(8) (1980) ("[p]erson means individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, or association, or any other legal entity"); Wash. Rev. Code

§ 1.16.080 (1987) (" 'person' may be construed to include the United States, this state, or any state or territory, or any public or private corporation, as well as an individual"). See also 3 Sands, Sutherland Statutory Construction § 62.04 (4th ed. 1986).

A legislative intent to exclude municipalities from being considered "persons" in the General Laws is underscored in G. L. c. 4, § 7, Twenty-fourth, which states that " '[p]lace' may mean a city or town." The use of "person" in the general laws is not apt to describe a municipality. *Howard* v. *Chicopee,* 299 Mass. 115, 121 (1937). *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.,* 329 Mass. 243, 250 (1952). Likewise, the inclusion of corporation in the definition of person has not been held to extend to municipal corporations. *Donohue* v. *Newburyport,* 211 Mass. 561, 568 (1912), and cases cited. *O'Donnell* v. *North Attleborough,* 212 Mass. 243, 245-246 (1912). *Mrugala* v. *Boston,* 330 Mass. 707, 708 (1953). *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.,* 329 Mass. at 250.

The Commonwealth attempts to distinguish the cases cited on the basis that those decisions are written in the context of efforts to surmount sovereign immunity. See, e.g., *Kilbane* v. *Secretary of Human Servs.,* 14 Mass. App. Ct. at 287-288. This distinction carries little weight when measured against the explicit language provided by the General Laws. When the Legislature intends that provisions in a statute apply to municipalities or governmental entities, it will generally manifest that intent expressly in language to that effect. *Donohue* v. *Newburyport,* 211 Mass. at 567. *O'Donnell* v. *North Attleborough,* 212 Mass. at 246. But see *Commissioner of Banks* v. *Highland Trust Co.,* 283 Mass. 71, 74 (1933) (notice to "persons" and "creditors" in statute manifestly intended to be broad enough to include claim of Commonwealth); *Attorney Gen.* v. *Woburn,* 322 Mass. 634, 637 (1948) (statute using word "person," when read as a whole, manifests intention to include municipalities within its non-penal provisions where statute is designed to prevent dis-

charge of sewage into rivers and attainment of legislative objective of public health would be hardly possible if cities and towns were not subject to its provisions). See also *Kilbane* v. *Secretary of Human Servs.*, 14 Mass. App. Ct. at 288.

If the town and the county are not persons for purposes of G. L. c. 269, § 14A, the government argues that at least the dispatcher, Leighton, herself should have the benefit of the statute, lest public employees be left without the same protection § 14A affords other citizens. Government employees, acting in their public capacity, are perhaps bound to suffer a modicum of vexation from the citizenry. Complaint and even repetitious complaint are occupational hazards which the public servant must anticipate. We do not eliminate the possibility that a series of calls to a public employee could take on a tone so directed at the recipient as an individual as to constitute harassment under the statute. Compare *Von Lusch* v. *State*, 31 Md. App. 271, 278 (1976), rev'd on other grounds, 279 Md. 255 (1977) (although defendant had right to telephone elected official with complaint, repeated phone calls made with requisite intent to annoy or abuse will not immunize caller from sanctions of statute prohibiting harassing phone calls merely because recipient is public official); *People* v. *Smith*, 89 Misc. 2d 789, 790-791 (N.Y. App. Term), cert. denied, 434 U.S. 920 (1977) (conviction under statute forbidding harassing phone calls upheld where defendant phoned police department twenty-seven times within three-hour period in regard to a complaint on basis that impropriety was in repetition of calls wherein substantial privacy interests invaded in essentially intolerable manner); *State* v. *Camp*, 59 N.C. App. 38, 43 (1982) (conviction under statute prohibiting harassing phone calls upheld where defendant phoned county sheriff's department approximately 500 times over two-month period cursing and threatening to kill or shoot deputies on basis that content and number of calls supported conclusion that defendant intended to annoy, harass, or threaten employees of sheriff's department).

That is not the case here. Voight had a grievance which was valid, even if not portentous. He had reason to telephone

the police department to ensure that his complaint would be registered. Town scolds have a hallowed function in reminding municipal officials of their duties. Perhaps Voight overstated his case to make his point. Nevertheless, while perhaps irritating, four phone calls within a half-hour period do not rise to the level of repetition taking on the nature of a personal attack against Leighton. The record does not reflect that she thought herself personally harassed, annoyed, or molested. That Leighton is an individual does not obscure the official capacity in which she performs her duties as police dispatcher; her duties are not private in nature. See *Donohue* v. *Newburyport*, 211 Mass. at 565; *Perez* v. *Boston Hous. Authy.*, 368 Mass. at 339. The motion for a required finding of not guilty should have been allowed. The judgment is reversed, the verdict is set aside, and a judgment is to be entered for the defendant.

*So ordered.*