Murphy, Ernest B., J.
This matter is before the court on defendant’s motion for summary judgment under Mass.R.Civ.P. 56(c). The plaintiff, Cathy Archambeault (Archambeault), brought this action against defendants for (1) breach of contract; (2) quantum meruit;[2] and (3) violation of G.L.c 93A. The defendants, Worcester Regional Transit Authority (WRTA) and RTA Transit Authority (RTA), move for summary judgment on all counts alleging that no genuine issue of material fact exists and that defendants are entitled to judgment as a matter of law. For the following reasons, it is ORDERED that defendant’s motion for summaryjudgment be ALLOWED as to Counts II, III, V and VI and DENIED as to Counts I and IV. It is further ORDERED that summaryjudgment be ENTERED for the plaintiff on Claims I and IV and that an evidentiary hearing be held on the issue of damages.

BACKGROUND

In 1993, RTA hired Archambeault as secretary to the Director of RTA Transit. After a number of years, Archambeault inquired about a job selling advertisement for the defendants and was encouraged to apply for the position. Archambeault, individually or through Archer Advertising, entered into the first, of many advertising sales contracts on July 29, 1997. Archambeault and RTA executed similar contracts on March 2, 1998 and December 7, 1998. Under these contracts, Archambeault, individually or through Archer Advertising, was to provide advertising services for the defendants and Archambeault would receive a thirteen percent commission based on the total advertising revenue collected by the defendants.
On May 10, 1999, Arcambeault accepted RTA’s written offer of employment and was named the Sales and Marketing Manager. Under the terms and conditions of her employment, Archambeault would receive an annual salary, commissions on new sales outlets she established and a commission on the annual increase in pass sales at these new sales outlets. In addition, Archer Advertising continued to receive commissions for the sale of transit advertising. Archambeault remained employed as the RTA Sales and Marketing Manager until May 7, 2000 and on that date she entered into a new agreement with RTA through Archer Advertising. In the May 7, 2000 agreement there is no mention of commissions for new sales outlets and the annual increase in pass sales, however, she would receive thirty dollars an hour for sales and marketing services, as well as fifteen percent of the total revenues for the sale of transit advertising. On August 3, 2001, RTA and Archer Advertising entered into a four-month contract with terms similar to the May 7, 2000 contract which covered the time period between July 1, 2000 and October 31, 2000.
On November 15, 2001, the WRTA and Archer Advertising entered into the final contract between Archambeault and the defendants. The essential terms of the ongoing contractual relationship remained the same and covered the period between November 1, 2001 and December 15, 2001. On November 19, 2001, Thomas Coyne (Coyne), the WRTA Director of Finance, requested from Archer Advertising a copy of all contacts from active and former advertisers and on December 6, 2001, Coyne sent Archambeault a commission check for transit advertising for the months of July through November 2001. On January 7, 2002, Archambeault was informed by the former Administrator of the WRTA that her contract for services would not be renewed. On January 31, 2002, Coyne sent a letter offering to settle all future commission owed for $2,088 and offered a settlement of $2,800 as a finder’s fee for contracts that were negotiated by Archer, but not signed as of December 15, 2001. Archambeault never responded to the offer and commenced this action claiming (1) breach of contract, both a breach of the express terms and breach of the implied covenant of good faith and fair dealing; (2) the Doctrine of Quantum Meruit requires that she be justly compensated for her services; and (3) that the defendants violated the Massachusetts Consumer Protection Statute, G.L.c. 93A.
Archambeault claims that she is due commissions for contracts that she executed with transit advertisers and for contracts that she negotiated, but did not fully execute, with transit advertisers before the termination of her contract with the defendants. She also claims that the defendant’s breach of the implied covenant of good faith and fair dealing constitutes an unfair or deceptive trade practice sufficient to establish a violation of G.L.c. 93A. She claims she is due, in total, over $130,000 in unpaid commissions. She bases that figure on the amount of revenue she estimates that the defendants have collected on the transit advertising contracts she negotiated and on the sales outlets she established.
The defendants claim that Archambeault has been paid in full for her services through November of2001 and that they tendered the remaining amount due on *462 potential future commissions, but Archambeault rejected the offer. Defendants claim that because Archambeault failed to retain a complete set of invoices as part of Archer Advertising’s business records, it is impossible for her to prove the actual amount of damages she is seeking. To the extent that this court finds that commissions are owed to Archambeault, the defendants seek to apply the Doctrine of Equitable Estoppel to preclude Archambeault from collecting on amounts she claims are owed from prior sales because she failed to invoice the defendants in a timely manner. Additionally, the defendants argue that the Doctrine of Laches applies to preclude her recovery of commissions due. Defendants claim that Archambeault had ample opportunity to resolve any discrepancies between the settlement offer and the commissions she is seeking prior to the dissolution of RTA, but she unreasonable failed to do so.

DISCUSSION

Summary judgment shall be granted when there is no genuine dispute as to any material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the party establishes the absence of a triable issue, the party opposing the motion must allege specific facts establishing the existence of a genuine issue of material fact. See Pederson, 404 Mass. at 17; Godbout v. Cousens, 396 Mass., 254, 261 (1985). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the non-moving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). On a motion for summary judgment, the court considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine whether summary judgment is appropriate. McGuiness v. Cotter, 412 Mass. 617, 620 (1992). In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Bailey v. Bellotti, 459 U.S. 970 (1982). Summary judgment, where appropriate, may be entered against the moving party, or may be entered as to certain issues and not others which may present a genuine issue of material fact. Community Nat’l Bank, 369 Mass. at 553.

A. Breach of Contract

In order to prevail on a breach of contract claim, Archambeault must establish (1) the existence of an enforceable contract; (2) breach of that contract; and (3) resulting damages. Carney v. New England Tel & Tel. Co., 353 Mass. 158, 164 (1967). “All of the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained.” Simmons v. Am. Dry Ginger Ale Co., Inc., 335 Mass. 521, 523 (1957), citing Caggiano v. Marchegiano, 327 Mass. 574, 579 (1951). With regard to damages, the Supreme Judicial Court has stated that “[w]hile it is true that a plaintiff need not prove damages with mathematical certainty, ‘damages cannot be recovered when they are remote, speculative, hypothetical and not within the realm of reasonable certainty.’ ” Kitner v. CTW Transport, Inc., 53 Mass.App.Ct. 741, 748 (2002), quoting Lowrie v. Castle, 225 Mass. 37, 51 (1916).
All of the contracts executed between RTA and Archer Advertising contain a similar provision stating that “in the event that the agreement is terminated, all sums due to Archer Advertising including all commissions shall be paid on existing contracts negotiated by Archer Advertising as of the date of termination to Archer Advertising in equal monthly installments that coincide with the terms of this agreement.” In addition, each of the contracts expressly states that “ [a]ll records of advertising revenue shall be maintained by [the defendants] . . . Payments to Archer Advertising shall be calculated each month by [the defendant’s] accounting department based on the revenue received by [the defendants] during the month, and shall be paid to Archer Advertising on a monthly basis ...” The defendants claim that Archambeault has been paid in full for her services through November 2001 and that she is not contractually entitled to the damages she is claiming. Archambeault claims she is due commissions for the sales outlets she established and for transit advertising contracts she executed or negotiated prior to the contract termination date of December 15, 2001.
It is clear from the language of the contract that the parties contemplated the eventual termination of the contractual relationship. The provision in the contract addressing this issue provides that Archambeault will continue to collect commissions on contracts she negotiated “as of the date of termination.” The unambiguous terms provide that Archambeault is due commissions on any revenue collected by the defendants for any advertising contracts she negotiated prior to December 15, 2001. It is clear form the record that Archambeault is due some amount of commissions on the contracts executed or negotiated prior to the contract’s termination date, however, the amount of commissions owed is not apparent from the summary judgment record.
*463 For example, the defendants argue that Archambeault’s invoices were adjusted for the months of September, October, November and December of 2001 because transit advertisers failed to pay their invoices for those months, however, the defendants failed to say whether they were able to eventually collect the amounts due from the advertisers. Clearly, Archambeault would be due the commissions for those payments, even if made late. In another instance, in December of 2001, the defendants adjusted Archambeault’s invoice because the WRTA “did not bill” a number of advertisers. It is not clear whether the defendants failed to bill the advertisers or if the advertisers were not due to receive a bill. If the defendants negligently failed to bill advertisers, but later collected the amount due, clearly Archambeault would be due her share of the commissions on the revenue eventually collected. Finally, defendants argue that Archambeault is not due commissions on the sale of transit advertising based on contracts she negotiated prior to December 15, 2001, but did produce in final executed form. The contract calls for Archambeault to be paid commissions on all contracts “negotiated” by Archambeault prior to December 15, 2001. If Archambeault “negotiated” any of these unsigned agreements she is owed commissions based on any revenues collected by the defendants under the contracts.
The defendants argue that because Archambeault cannot demonstrate the damages she is seeking with the requisite certainty that she is not entitled to recover anything, however, in the opinion of this court, an accurate calculation of damages is ascertainable through an audit of defendant’s records. Archer Advertising’s regular practice was to invoice defendants based on the advertising reports provided by the defendant’s accounting department. At some point in late 2001, Archambeault claims that her invoices were rejected and defendants returned the invoices to her with new monthly advertising spreadsheets. Archambeault claims she was unable to produce accurate invoices for her services based on the discrepancies between the advertising reports and the new advertising spreadsheets. In January 2002, Archambeault was offered a settlement for all outstanding commissions owed and after failing to respond to the settlement she filed the instant action. Each of the contracts entered into by the parties stated that the defendants shall maintain records of all advertising revenue and that Archer Advertising shall be paid on a monthly basis. A fair reading of this language demonstrates that it was the defendant’s affirmative obligation to pay Archambeault on a monthly basis and that defendants breached this express provision of the contract.
While this court finds a breach of the express terms of the contracts, it does not find a breach of the covenant of good faith and fair dealing. This case is not analogous, as plaintiff argues, to Fortune v. The National Cash Register Co., 373 Mass. 96 (1977), where an employee was terminated the day after he secured a $5 million dollar order so that his employer would not have to pay his commissions. In the instant case, the disputed commissions owed cover a number of sales that occurred over a number of years. Here, Archambeault was not an employee of the defendants, but was a vendor that did not have her contract for advertising services renewed upon expiration of the previous contract. The clear implication of bad faith found in Fortune is not present and thus, this court finds that the defendants did not violate the covenant of good faith and fair dealing when failing to renew Archambeault’s contract.[3]
Summary judgment shall enter for Archambeault on the breach of contract claim as it is clear that at least some commissions remain outstanding. An evi-dentiary hearing on the issue of damages should establish what commissions Archambeault is due based on the transit advertising contracts she negotiated prior to the termination of her contract with the defendants, as well as what she is owed for the establishment of the ticket sales outlets and the corresponding increases in ticket sales.

B. Violation of G.L.C. 93A Against WRTA and RTA 1. G.L.c. 93A Claim Against WRTA and RTA

Archambeault claims that the defendants represented that they would pay her in full for her services without actually intending to do so and that the conduct of the defendants constitutes unfair or deceptive acts or practices in violation of G.L.c. 93A, §11.
A business may bring an action pursuant to G.L.c. 93A, §11 against another person who engages “in an unfair method of competition or an unfair or deceptive act or practice.” G.L.c. 93A, §11. The Supreme Judicial Court has held that a “mere breach of contract without more” is not violative of Chapter 93A. See Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 763 (1989) (Plaintiff must show unfair or deceptive trade practices attendant to the breach); Rossborough v. On The Beat, Inc., 62 Mass.App.Ct. 1117 (2004) (“Ordinary contract disputes generally do not rise to c.93A liability”), citing Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 505 (1997). In this case, we have a ordinary contract dispute where both parties disagree about the compensation owed to Archambeault for services rendered. It is the opinion of this court, based on the summary judgment record, that neither the WRTA or the RTA has engaged in the type of immoral, unethical, oppressive, or unscrupulous conduct that is the hallmark of Chapter 93A liability and as a result, Archambeault cannot sustain her Chapter 93A claim against RTA or the WRTA.

2. G.L.c. 93A Claim Against the WRTA

G.L.c. 93A, §11 provides a remedy for a business person, which is defined as any person who engages in the conduct or any trade of commerce, who suffers financial or properly loss due to an unfair method of *464 competition or an unfair or deceptive act or practice by another business person. To bring a claim as a business person under G.L.c. 93A, the parties must meet the statutory definition of the word person found in c. 93A, §1(a). A person is defined as “natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity.” See Bretton v. State Lottery Comm’n., 41 Mass.App.Ct. 736 (1996) (State Lottery Commission, a statutorily created entity, is not a “person" subject to the provision of 93A).
“[I]t is a widely accepted rule of statutory construction that general words in a statute such as ‘persons’ will not ordinarily be construed to include the State or political subdivision thereof.” Kilbane v. Secretary of Human Services, 14 Mass.App.Ct. 286, 287 (1982), quoting Hanson v. Commonwealth, 344 Mass. 214, 219 (1962). The term “person” in G.L.c. 93A has consistently been interpreted as not including public entities. See Morton v. Town of Hanover, 43 Mass.App.Ct. 197 (1997); Bretton v. State Lottery Comm’n., 41 Mass.App.Ct. 736 (1996). In addition, the terms of Chapter 93A refer specifically to individuals acting in a business context. All Seasons Services, Inc. v. Comm’r. of Health and Hospitals of Boston, 416 Mass. 269 (1993). Therefore, when a public entity engages in a business activity that is merely incidental to its primary function, it is not subject to Chapter 93A liability. Morton, 43 Mass.App.Ct at 205-06 (1997) (“Political subdivisions of the Commonwealth continue to be excluded from cognizance as such ‘persons’ under c.93A, where, as here, they do not act in a business context”); All Seasons Services, Inc., 416 Mass. at 271 (city owned and operated hospital not engaging in trade or commerce by contracting for supplies).
Here, the WRTA was created as a body politic and a subdivision of the Commonwealth under the provisions of G.L.c. 161B and is not considered a ‘person’ as defined in G.L.c. 93A, § 1 (a). As such, Archambeault cannot sustain her G.L.c. 93A claims against the WRTA.

ORDER

For these reasons, it is ORDERED that defendant’s motion for summary judgment be ALLOWED as to Counts II, III, V and VI and DENIED as to Counts I and IV. It is further ORDERED that summary judgment be ALLOWED for the Plaintiff on Claims I and IV and that an evidentiary hearing be held on the issue of damages.

This court finds that an express contract, covering the same subject matter of the quantum meruit claims, existed between Archambeault and the defendants which precludes recovery under Counts II and V. See Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993) (“Recovery in quantum memit presupposes that no valid contract covers the subject matter of the dispute. Where such a contract exists, the law need not create a quantum meruit nght to receive compensation for services rendered”).

Because this court finds that defendants did not violate the implied covenant of good faith and fair dealing, plaintiffs argument that the breach of the covenant of good faith and fair dealing constitutes a violation of G.L.c. 93A is not further addressed.