438 Mass. 197 (2002)                                          197

Greater Boston Real Estate Board v. Department of Telecommunications and Energy.

GREATER BOSTON REAL ESTATE BOARD & others[1] vs.
DEPARTMENT OF TELECOMMUNICATIONS AND ENERGY &
another.[2,3]

Suffolk. October 8, 2002. - November 27, 2002.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

Constitutional Law, Taking of property. Department of Telecommunications
and Energy. Statute, Construction. Injunction.

In an action alleging that the Department of Telecommunications and Energy
(department) was not authorized to regulate commercial and residential
building owners as "utilities," or to require any private landowner to
provide nondiscriminatory access to utility poles, ducts, conduits, and at-
tachments, this court concluded that the second paragraph of the definition
of "[u]tility" in 220 Code Mass. Regs. § 45.02, which included com-
mercial and multiple dwelling unit buildings, reached private parties who
were outside the legislatively granted scope of the authority of the depart-
ment, and thus was ultra vires of the department's authority under G. L.
c. 166, § 25A, and that § 45.04(2)(h), concerning complaints received
regarding access to such buildings for the physical attachment of wires or
cables, was similarly invalid. [201-205]

CIVIL ACTION commenced in the Superior Court Department on
November 3, 2000.

The case was heard by Mitchell J. Sikora, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

Thomas A. Barnico, Assistant Attorney General, for Depart-
ment of Telecommunications and Energy.

Kenneth W. Salinger for the intervener.

[1]Massachusetts Chapter of National Association of Industrial and Office
Properties, Massachusetts Association of Realtors, and Real Access Alliance.
[2]Smart Buildings Policy Project, intervener.
[3]We acknowledge the amicus briefs filed by RCN Corporation; XO Mas-
sachusetts, Inc., The Association for Local Telecommunications Services, and
The Building Access Coalition; and New England Legal Foundation.

*Ieuan G. Mahoney* for the plaintiffs.

The following submitted briefs for amici curiae:

*L. Elise Dieterich,* of the District of Columbia, for RCN Corporation.

*Eric J. Krathwohl, Nicolas A. Kensington, & Harold B. Dondis,* for XO Massachusetts, Inc., & others.

*Michael E. Malamut* for New England Legal Foundation.

SPINA, J. The Department of Telecommunications and Energy (department) and the Smart Buildings Policy Project appeal from a judgment of the Superior Court that declared 220 Code Mass. Regs. §§ 45.02 and 45.03(1) (2000) (regulations) to effect an unconstitutional taking of property without just compensation because the regulations compel access to private property for the physical attachment of wires or cables. The judgment also permanently enjoined the department from implementing those regulations to the extent that they applied to private landowners. We transferred the case to this court on our own motion.

We hold that the second paragraph of the definition of "[u]tility" in 220 Code Mass. Regs. § 45.02, which includes commercial and multiple dwelling unit buildings, reaches private parties who are outside the legislatively granted scope of the department's authority, and is thus ultra vires.[4] Section

---

[4]The second paragraph of the definition of "[u]tility," appearing in 220 Code Mass. Regs. § 45.02 (2000) states:

"Effective July 1, 2001, utility, for purposes of 220 [Code Mass. Regs. §] 45.00, shall include but not be limited to a building that is rented, leased, let or hired out, for office or other commercial purposes and a multiple dwelling unit building that is rented, leased, let or hired out for office or other commercial purposes and a multiple dwelling unit building that is rented, leased, let or hired out for occupation as the residence of four or more residential tenants or lessees living independently of each other. This definition exempts buildings that house fewer than four families living independently of one another and exempts four-unit buildings where one of the four units is owner occupied. Condominiums, homeowners' associations, tenancies of less than 12 months in duration and transient facilities such as hotels, rooming houses, continuing care retirement communities, including assisted living apartments, and nursing homes shall also be exempted from 220 [Code Mass. Regs. §] 45.02: *Utility.*"

45.04(2)(h), concerning complaints received regarding access to such buildings, is similarly invalid.[5] Because we decide that the subject regulations are not statutorily authorized, we need not reach the constitutional issue. We vacate the permanent injunction issued by the judge below as unnecessary in this case.

1. *Background.* On July 24, 2000, the department promulgated regulations under the authority of G. L. c. 166, § 25A,[6]

---

[5]Title 220 Code Mass. Regs. § 45.04(2)(h) states: "Every complaint . . . shall also contain the following: (h) where a complaint concerns access to a commercial building or multiple dwelling unit building, a writing signed by a lessee or tenant clearly evidencing that said lessee or tenant has requested service by the complainant for the provisions of which service the denied attachment is necessary."

[6]General Laws c. 166, § 25A, states, in relevant part:

"The following terms as used in this section shall have the following meanings:

" 'Utility', means any person, firm, corporation or municipal lighting plant that owns or controls or shares ownership or control of poles, ducts, conduits or rights of way used or useful, in whole or in part, for supporting or enclosing wires or cables for the transmission of intelligence by telegraph, telephone or television or for the transmission of electricity for light, heat or power.

" 'Attachment', means any wire or cable for transmission of intelligence by telegraph, telephone or television, including cable television, or for the transmission of electricity for light, heat, or power and any related device, apparatus, appliance or equipment installed upon any pole or in any telegraph or telephone duct or conduit owned or controlled, in whole or in part, by one or more utilities.

" 'Licensee', means any person, firm or corporation other than a utility, which is authorized to construct lines or cables upon, along, under and across the public ways. . . .

" 'Usable Space', means the total space which would be available for attachments, without regard to attachments previously made, (i) upon a pole . . . or (ii) within any telegraph or telephone duct or conduit.

"The department of telecommunications and energy shall have authority to regulate the rates, terms and conditions applicable to attachments, and in so doing shall be authorized to consider and shall consider the interest of subscribers of cable television services as well as the interest of consumers of utility services . . . .

"Said department, pursuant to the provisions of this section, shall determine a just and reasonable rate for the use of poles and communication ducts and conduits of a utility for attachments of a licensee by assuring the utility recovery of not less than the additional costs of making provision for attachments nor more than the proportional capital and operating expenses of the utility attributable to that portion of the pole, duct, or conduit occupied by the attachment. Such portion shall be computed by determining the percentage of

designated as 220 Code Mass Regs. §§ 45.00.[7] The purpose and applicability of the regulations is to "effect[] legislative policy in favor of competition and consumer choice in telecommunications by providing for complaint and enforcement procedures to ensure that telecommunications carriers and cable system operators have nondiscriminatory access to poles, ducts, conduits, and rights-of-ways owned or controlled, in whole or in part, by one or more utilities with rates, terms and conditions that are just and reasonable." 220 Code Mass. Regs. § 45.01.[8] The first paragraph of the definition of "[u]tility" in 220 Code Mass. Regs. § 45.02 incorporates precisely the definition set forth in the enabling statute, G. L. c. 166, § 25A. See note 6, *supra*. However, additional language in the second paragraph extends the definition of "utility" in the regulation to certain buildings not mentioned in § 25A. See note 4, *supra*.

Having thus defined a utility, the regulations require that "[a] utility shall provide a licensee [defined in 220 Code Mass. Regs. § 45.02 as 'any person, firm or corporation other than a utility, which is authorized to construct lines or cables upon, along, under and across public ways . . .'] with nondiscriminatory access to any pole, duct, conduit, or right-of-way used or useful, in whole or in part, for the purposes described in [G. L.] c. 166, § 25A, owned or controlled by it." 220 Code Mass. Regs. § 45.03(1).[9]

On November 3, 2000, the plaintiffs filed a complaint seeking

---

the total usable space on a pole or the total capacity of the duct or conduit that is occupied by the attachment."

[7]D.T.E. No. 98-36-A (order establishing complaint and enforcement procedures to ensure that telecommunications carriers and cable system operators have nondiscriminatory access to utility poles, ducts, conduits, and rights-of-way and to enhance consumer access to telecommunications services).

[8]Title 47 U.S.C. § 224 (2000) provides for Federal regulation of pole attachments by the Federal Communications Commission (FCC), but states that, "[n]othing in this section shall be construed to . . . give the [FCC] jurisdiction with respect to rates . . . or access to poles, ducts, conduits, and rights-of-way . . . for pole attachments in any case where such matters are regulated by a State." 47 U.S.C. § 224(c)(1).

[9]This section continues: "Notwithstanding this obligation, a utility may deny a licensee access to its poles, ducts, conduits, or rights-of-way, on a nondiscriminatory basis for valid reasons of insufficient capacity, reasons of safety, reliability, generally applicable engineering standards, or for good cause shown. Any exclusive contract between a utility and a licensee entered

declaratory and injunctive relief, alleging that G. L. c. 166, § 25A, did not authorize the department to regulate commercial and residential building owners as "utilities," nor did it authorize the department to require any private landowner to provide nondiscriminatory access to utility poles, ducts, conduits, and attachments. The plaintiffs requested a declaration that the regulations exceed the department's authority under G. L. c. 166, § 25A, and are thus ultra vires, and that the regulations effect a taking of private property without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

The plaintiffs filed a motion for summary judgment. A judge in the Superior Court issued an order for judgment for the plaintiffs, declaring that the regulations constituted a taking of property without just compensation in violation of the Massachusetts and United States Constitutions, and he permanently enjoined the department from implementing 220 Code Mass. Regs. §§ 45.02 and 45.03(1).

By agreement of the parties, the judgment was amended to state that the regulations were unconstitutional "to the extent such regulations apply to '[p]rivate [l]andowners,' "[10] and further limiting the permanent injunction prohibiting the department from implementing 220 Code Mass. Regs. §§ 45.02 and 45.03(1), to the "extent such regulations apply to [p]rivate [l]andowners."

2. *Discussion.* Statutes regulating utilities in Massachusetts

---

into or extended after the department's adoption of 220 [Code Mass. Regs. §] 45.00 concerning access to any pole, duct, conduit, or right-of-way, owner or controlled, in whole or in part, by such utility shall be presumptively invalid insofar as its exclusivity provisions are concerned, unless shown to be in the public interest." 220 Code Mass. Regs. § 45.03 (1).

[10]The judgment defined a "[p]rivate [l]andowner" as "the owner, owner's agent, mortgage lender, or any other person legally entitled to assert the interests of the owner, (a) of a building that is rented, leased, let or hired out, for office or other commercial purposes; (b) of a multiple dwelling unit that is rented, leased, let or hired out for office or other commercial purposes; or (c) of a multiple dwelling unit that is rented, leased, let or hired out for occupation as the residence of four or more residential tenants or lessees living independently of each other."

first appeared in the mid-1800's.[11] These early statutes permitted private parties to erect and construct wires for telegraph, telephone, and electricity in public ways with permission of the local governing board, and subject to the condition that local authorities could allow other users to obtain access to those poles. See G. L. c. 166, §§ 23, 24. Today, the definition of a "utility" in G. L. c. 166 (telephone and telegraph companies and lines for transmission of electricity) still includes "a person" who has been or may be granted authority to construct or maintain poles and associated wires in public ways for the purpose of transmitting electricity or telecommunications signals. See G. L. c. 166, §§ 22A (f), 23 ("citizens"), 24, 25A.

Thus, the enabling legislation under which the department adopted the regulations in question has a long history of defining a utility as including private individuals, where those individuals request access to public ways in order to install poles, or to run wires or lines for the transmission of electricity or telecommunications signals. The enabling legislation historically has also included persons who were providers of electricity or telecommunications. It has never included as a utility a recipient of electricity or telecommunications. "Statutes are to be construed in the light of the preexisting common and statutory law . . . . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed." (Citations omitted.) *Ferullo's Case*, 331 Mass. 635, 637 (1954). The regulations at issue, however, purport to regulate, as utilities, private persons who have not requested access to the public ways in order to act as a provider of such services, but who are merely recipients of such services. See 220 Code Mass. Regs. § 45.02, second par.

The department essentially asserts that 220 Code Mass. Regs. §§ 45.02 and 45.03(1) properly allow a provider of telecom-

---

[11]See G. L. c. 166, § 21, inserted by St. 1849, c. 93, § 2, dealing with the location of wires in public ways; G. L. c. 166, § 22, inserted by St. 1849, c. 93, § 3, requiring a company seeking to construct such lines to obtain permission from the local governing body; G. L. c. 166, § 23, inserted by St. 1880, c. 83, § 3, allowing private citizens to establish and maintain wires for telegraph and telephone within their town; G. L. c. 166, § 24, inserted by St. 1869, c. 457, § 2, authorizing a private person, for private use, to construct poles and place wires in public ways, subject to future use by others.

munications services (a licensee) to insert new wires into the ducts and conduits or onto the poles or building of a private landowner who is a recipient of telecommunications services. It reaches this conclusion by analogy: a private landowner, by "inviting in" the first telecommunications provider is the equivalent of the private landowner going to the board of selectmen in his town and applying for permission to run wires in a public way. He has, it concludes, opened himself up to expanded use of those ways by that initial use of those ways. The department asserts that all that the regulations require of the private landowner is that he not discriminate in providing further access to his poles, ducts, or conduits. This analogy fails. The department's expansion of the definition of "utility" to include a recipient of services is a radical change in the historical use of the word by the legislature. Absent any legislative support for the department's construction, we reject it.

There is additional reason for construing the statute so as to conclude that the department has not been given authority to regulate passive recipients of utility services, but only the active providers of those services. General Laws c. 159, § 12,[12] the broad enabling legislation for the department, confers authority to supervise and regulate telecommunications companies and services that are furnishing or rendering those services for public use. See *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 329 Mass. 243, 249-250

---

[12] "The department shall, so far as may be necessary for the purpose of carrying out the provisions of law relative thereto, have general supervision and regulation of, and jurisdiction and control over, the following services, *when furnished or rendered for public use* within the commonwealth . . . and all persons, firms, corporations, associations and joint stock associations or companies *furnishing or rendering any such service or services . . .* collectively called common carriers . . . . (*d*) The transmission of intelligence within the commonwealth by electricity, by means of telephone lines or telegraph lines or any other method or system of communication, including the operation of all conveniences, appliances, instrumentalities, or equipment appertaining thereto, or utilized in connection therewith." (Emphases added.)

See G. L. c. 25, § 12E ½, establishing a division of telecommunications within the department and stating that the telecommunications division "shall perform such functions . . . in relation to the administration, implementation, and enforcement of the department's authority over the telecommunications industry, including, but not limited to, the authority granted by chapters 25, 30A, 159, and 166."

(1952) ("It is plain . . . that the power of supervision and regulation granted by c. 159 over services furnished or rendered by common carriers is intended to apply only to such services when furnished or rendered by the agencies therein specified"). See note 12, *supra*. The specific authority of the department to regulate the use of poles, ducts and conduits under G. L. c. 166 ("Telephone and Telegraph Companies, and Lines for the Transmission of Electricity"), must be construed in harmony with the broad authority to regulate these utilities in the first instance under G. L. c. 159 (Common Carriers). See *Smith* v. *Commissioner of Transitional Assistance*, 431 Mass. 638, 646 (2000), and cases cited. In this case, the regulations at issue are designed to regulate private property owners who do not fall within the class of persons that the Legislature has authorized the department to regulate and, as such, are ultra vires of the enabling legislation.

We hold that the second paragraph of the definition of "[u]tility" appearing in 220 Code Mass. Regs. § 45.02, as it applies to commercial and multiple dwelling unit buildings, is ultra vires of the department's authority under G. L. c. 166, § 25A.[13] It necessarily follows that § 45.04(2)(h) (concerning complaints received regarding access to such buildings) is also invalid. Because § 45.03(1) no longer applies to such buildings or to "private landowners," the basis for challenging its validity in this appeal is eliminated.[14]

We vacate the order for injunctive relief because it is not necessary in the circumstances. See *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 730 (1980) (injunction should be no more

---

[13]The plaintiffs argue that, under *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the regulations are unconstitutional because any permanent physical occupation of private property, no matter how slight its impact, constitutes a taking; and the statute and the regulations neither make reference to G. L. c. 79, which regulates takings by eminent domain in the Commonwealth, nor do the regulations provide an aggrieved landowner with a right to a jury trial to determine whether any compensation is just, as set forth in art. 15 of the Declaration of Rights of the Massachusetts Constitution. Because we hold that the regulations are ultra vires of the statute, we do not reach this question.

[14]Because the regulations contain a severability provision, the remaining portions of 220 Code Mass. Regs. §§ 45.00 are unaffected by our holding.

intrusive than necessary to accomplish legally justified result, especially where public officials are object of injunction).

The case is remanded to the Superior Court for an order vacating both the injunction and the declaratory judgment. A judgment is to enter declaring that both the second paragraph of the definition of "[u]tility" in 220 Code Mass. Regs. § 45.02 and 220 Code Mass. Regs. § 45.04(2)(h) are invalid as beyond the authority of the Department of Telecommunications and Energy under G. L. c. 166, § 25A.

*So ordered.*