444                    74 Mass. App. Ct. 444 (2009)

Woods Hole, Martha's Vineyard & Nantucket Steamship Authority *v.* Town of Falmouth.

WOODS HOLE, MARTHA'S VINEYARD & NANTUCKET STEAM-
SHIP AUTHORITY *vs.* TOWN OF FALMOUTH & another.[1]

No. 08-P-962.

Dukes County. April 6, 2009. - June 18, 2009.

Present: LENK, KANTROWITZ, & WOLOHOJIAN, JJ.

*Woods Hole, Martha's Vineyard and Nantucket Steamship Authority. Municipal Corporations,* Parking place. *License. Statute,* Construction. *Words,* "Person."

A Superior Court judge correctly granted declaratory and injunctive relief in favor of the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (authority) to preclude the application by the town of Falmouth (town) of a local law establishing licensing requirements and fees for entities engaged in operating open air parking lots, where the authority, a public instrumentality performing essential governmental functions, was not a "person" in the "business" of operating parking lots and thus subject to regulation under G. L. c. 148, § 56. [445-449]

CIVIL ACTION commenced in the Superior Court Department on April 19, 2005.

A motion for a preliminary injunction was heard by *Herman J. Smith,* J.; a motion for a partial summary judgment was heard by *Thomas E. Connolly,* J.; and entry of final and separate judgment was ordered by *David A. McLaughlin,* J.

*Frank K. Duffy, Jr.,* for the defendants.

*Michael D. Vhay* (*Steven M. Sayers* with him) for the plaintiff.

LENK, J. The town of Falmouth (Town), in which the mainland port of Woods Hole is located, serves as the departure point for ferries to Martha's Vineyard operated by the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (Authority). The Town is host to a number of open-air parking lots owned by the Authority which provide parking for the ferry passengers. In 2004, the Town adopted what it characterizes as a health and

[1]Chief of the Falmouth Fire Rescue Department.

safety measure, Chapter 213, Article V, §§ 13-22 of the Code of Falmouth (Article V), that establishes licensing requirements and fees for "entities engaged in operating open air parking lots."[2] The Town asserts that Article V is authorized by virtue of G. L. c. 148, § 56, as amended through St. 1991, § 202, quoted below,[3] which it accepted, also in 2004. Upon the Town's adoption of Article V, the Authority brought an action in Superior Court seeking declaratory and injunctive relief to preclude its application to the Authority's parking lots. Judgment entered for the Authority; the Town and its fire chief (collectively, the Town) now appeal. We affirm.

The questions presented here are essentially two-fold: (i) whether the Authority is a "person" in the "business" of operating parking lots within the meaning of G. L. c. 148, § 56; and (ii) if so, whether the Authority's Enabling Act, chapter 701 of the Acts of 1960, as amended, prohibits the Town from attempting to "regulate" the Authority by imposing a license fee on the Authority's parking lots. Because we hold that the Authority is not a "person" within the meaning of § 56, we do not reach the remaining question.

The Authority and its statutory predecessor[4] have been in existence since 1948. The Authority was created as a "body corporate" which is "deemed to be a public instrumentality for the purposes of this act." Enabling Act at § 3. Its purpose is "to provide adequate transportation of persons and necessaries of life for the islands of Nantucket and Martha's Vineyard." Enabling Act at

---

[2] Article V defines "entity" in a manner that would encompass the Authority. The Town's fire chief would administer the licensing process.

[3] As relevant here, § 56 provides:

"In any city or town which accepts the provisions of this section, no person shall engage in the business of conducting or maintaining an open-air parking space without a license therefor granted . . . by the local licensing authority, approved in all cases by the head of the fire department. . . . The provisions of this section shall not apply to any open-air parking space established under paragraph (g) of section three of chapter one hundred and sixty-one A or under paragraph (g) of section six of chapter one hundred and sixty-one B and maintained or conducted by the Massachusetts Bay Transportation Authority or by an authority created under said chapter one hundred and sixty-one B or a lessee or licensee thereof."

[4] The New Bedford, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.

§ 1. The court observed in *Bourne* v. *Plante*, 429 Mass. 329, 332-333 (1999):

> "To this end, the Legislature has expressly granted the Authority the power to (1) 'acquire, maintain, repair and operate a boat line'; (2) 'acquire, hold and dispose of real and personal property . . . for its corporate purposes'; (3) 'make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act'; and (4) 'do all acts and things necessary or convenient to carry out the powers expressly granted in this act.' The legislation provides that its provisions are to be liberally construed, and there is nothing therein which even remotely suggests that . . . any . . . municipality . . . is to have a veto power over the Authority's operation and maintenance of the boat line and related aspects of its operations." (Citations omitted.)

The Legislature also expressly provided that "the operation and maintenance of the steamship line by the Authority will constitute the performance of essential government functions." Enabling Act at § 6. The Authority's parking operations are ancillary to those essential functions. "[W]e have no difficulty in concluding that the Authority's choice to provide off-site parking is directly and inextricably linked to its mission." *Plante, supra* at 335.

With this background in mind, we turn to an analysis of G. L. c. 148, § 56, pursuant to which the Town adopted the licensing and fee scheme set out in Article V. Section 56 applies only to a "person" who engages in the "business" of conducting or maintaining an open-air parking space in a town. When the Legislature enacts a statute such as § 56 that applies only to "persons," it does not intend the statute to apply to the Commonwealth or any of its governmental entities, including government authorities. General Laws c. 4, 7, Twenty-third, provides that the words "[p]erson" or "whoever," as they are used throughout the General Laws, "shall include corporations, societies, associations and partnerships." As has been many times observed, this definition does not encompass "governmental agencies, municipalities, or municipal corporations." *Commonwealth* v. *Voight*, 28 Mass. App. Ct. 769, 771 (1990). See *New Bedford* v. *New Bedford,*

*Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 329 Mass. 243, 250 (1952) (steamship authority not "person" subject to regulation by Department of Public Utilities); *Perez* v. *Boston Hous. Authy.*, 368 Mass. 333, 338-339 (1975). See also *Teasdale* v. *Newell & Snowling Constr. Co.*, 192 Mass. 440, 442-443 (1906); *O'Donnell* v. *North Attleborough*, 212 Mass. 243, 245-246 (1912); *Bretton* v. *State Lottery Commn.*, 41 Mass. App. Ct. 736, 738 (1996).

The Authority's performance of "essential governmental functions" as a "public instrumentality" of the Commonwealth puts the Authority in the same category as the Commonwealth or a municipality, which likewise are not "persons" under c. 4, § 7, Twenty-third. Enabling Act at §§ 6, 3. See *New Bedford, supra.* Insofar as the Authority is not among those entities specified in c. 4, § 7, Twenty-third, namely, "corporations, societies, associations and partnerships," it is not a "person" under § 56.

The Town does not appear to argue that the Authority was originally a "person" within the meaning of § 56, but instead suggests that the Authority became a "person" when the Legislature inserted the last sentence of § 56 in 1965 (with later revisions in 1973), more than thirty years after the original enactment in 1930. The last sentence exempted the Massachusetts Bay Transportation Authority (MBTA) and certain other regional transit authorities, as well as their lessees and licensees, from the operation of § 56. St. 1965, c. 444. St. 1973, c. 1141, § 6. The Town's contention is that the Legislature thereby inferentially amended the term "person" in § 56 to include all Commonwealth agencies, departments and authorities not expressly excluded. Otherwise put, the Town maintains that if the Legislature had not viewed the term "person" in § 56 as applying to agencies such as the Authority, there would have been little need to exempt specifically the MBTA and the regional transportation agencies (and their lessees and licensees) from the operation of § 56.

There are two ways of reading the pertinent language of § 56. The first is to view the last sentence as having been added to clarify that, to whatever extent the MBTA and regional transit authorities and their lessees and licensees might be viewed as a "person," the provisions of § 56 are not to apply to any open-air parking space that they maintain or conduct. The second is as the

448       ,       74 Mass. App. Ct. 444 (2009)

Woods Hole, Martha's Vineyard & Nantucket Steamship Authority *v*. Town of Falmouth.

Town suggests, i.e., that the last sentence encompasses within the term "person" all Commonwealth departments, agencies, authorities and instrumentalities, except for the MBTA and regional transit authorities (and their lessees and licensees). The first is the more sensible reading.

As noted earlier, both by virtue of the statutory definition of "person" used throughout the General Laws and by virtue of the case law, the term "person" has long been understood not to include governmental agencies, municipalities or municipal corporations. It would be a significant departure from this long-standing practice for the Legislature, without expressly altering other language in § 56 that would make its intent quite plain, to include in the term "person" all governmental entities other than those expressly excluded. We will not presume that such a radical expansion of the statute was intended by negative implication. See *Greater Boston Real Estate Bd.* v. *Department of Telecommunications & Energy*, 438 Mass. 197, 202 (2002), quoting from *Ferullo's Case*, 331 Mass. 635, 637 (1954) ("Statutes are to be construed in the light of the preexisting common and statutory law . . . . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed"). The insertion of the last sentence is more sensibly understood as no more than the Legislature's effort to address specific situations warranting attention.[5]

Because the Authority is not a "person" under § 56, the

---

[5]There are substantial differences between the history and enabling acts of the Authority, on the one hand, and of the MBTA and regional transit authorities on the other, which may have prompted the Legislature's insertion of the last sentence in § 56. The Enabling Act for the Authority (as well as the enabling acts, for example, of the Massachusetts Port Authority and the Massachusetts Turnpike Authority, see St. 1952, c. 54, § 21; St. 1956, c. 465, § 29) contains an "inconsistent laws" provision, Enabling Act at § 19, ensuring that inconsistent statutes are inapplicable when they interfere with the Authority's ability to perform its essential governmental functions. Neither the MBTA's nor the regional transit authorities' enabling acts contain similar "inconsistent laws" provisions. The insertion of the last sentence accordingly provides a clarification for those parking lots that are operated by the MBTA, the regional transit authorities, and their licensees and lessees that the parking lots operated by the Authority do not need. Indeed, unlike the Authority, the MBTA and regional transit authorities operate indirectly through other entities such as licensees and lessees, which might well be regarded as "person[s] . . . engaged in the business" of operating parking lots under § 56.

Town may not apply Article V to the Authority's open-air parking lots.

*Judgment affirmed.*