ANAWAN INSURANCE AGENCY, INC., & another[1] vs. DIVISION
OF INSURANCE.

No. 09-P-744.

Suffolk. November 13, 2009. - March 12, 2010.

Present: KANTROWITZ, DREBEN, & RUBIN, JJ.

Further appellate review granted, 456 Mass. 1106 (2010).

*Practice, Civil,* Statute of limitations. *Limitations, Statute of. License. Insurance,* Agent. *Statute,* Construction.

In proceedings before the Division of Insurance (division), arising from the division's claims that the plaintiffs (an insurance agency and one of its officers and directors) had violated G. L. c. 176D, § 2, and G. L. c. 175, § 177, by paying compensation, in 2000 and 2001, to a person who was not duly licensed as a broker, the hearing officer erred in finding that the applicable four-year statute of limitations, G. L. c. 260, § 5A, was tolled because the division proved that it did not know of the payments until several months before the division issued an order to show cause to the plaintiffs in late 2004, where liability under § 177 attaches at the time of violation, and where nothing in the language of § 5A, a general statute applicable in all civil penalty cases, suggests that the running of the limitations period turns on the degree of difficulty an agency experiences in detecting violations. [449-452]

In proceedings before the Division of Insurance (division), arising from the division's claims that the plaintiffs (an insurance agency and one of its officers and directors) violated G. L. c. 175, § 177, by paying compensation, in 2000 and 2001, to a person who was not duly licensed as a broker, the division properly applied the statute in effect at the time of the plaintiffs' actions and did not give retroactive effect to a 2002 amendment adding a scienter element to § 177. [452-453]

In proceedings before the Division of Insurance (division), arising from the division's claims that the plaintiffs (an insurance agency and one of its officers and directors) violated G. L. c. 176D, § 2, and G. L. c. 175, § 177, by paying compensation to a person who was not duly licensed as a broker, the division improperly assessed fines under the more onerous provisions of G. L. c. 176D rather than under § 177, where § 177 is a self-contained statute, prescribing specific remedies for its violation. [453-454]

CIVIL ACTION commenced in the Superior Court Department on November 6, 2007.

[1]Stephen G. Michaels.

The case was heard by *Bruce R. Henry*, J., on a motion for judgment on the pleadings.

*Stephen G. Michaels* for the plaintiff.

*Jennifer Grace Miller*, Assistant Attorney General, for the defendant.

DREBEN, J. The plaintiffs appeal from a decision of a judge of the Superior Court affirming a decision of the Commissioner of Insurance (commissioner), which in turn affirmed a decision and order of a hearing officer of the Division of Insurance (division). The decision held that the plaintiffs, Anawan Insurance Agency, Inc. (Anawan) and Stephen Michaels, one of its officers and directors, violated § 2 of G. L. c. 176D and § 177 of G. L. c. 175 by having paid compensation to one Kuntthy Prum at a time that Prum was not duly licensed as an insurance agent. The hearing officer ordered the plaintiffs to pay fines of $27,800 for 278 violations of G. L. c. 176D, § 2, that took place between November 1, 2000 and December 31, 2001, and $2,200 for twenty-two violations that occurred between August 1, 2000 and October 31, 2000.[2]

The plaintiffs argue that the division's claims are barred by the statute of limitations, that the plaintiffs were not in violation of G. L. c. 175, § 177, because the statute requires scienter and, that in any event, the fines should have been assessed under G. L. c. 175, § 177, rather than under G. L. c. 176D, § 7. We vacate the judgment, and order that a new judgment enter remanding the case to the commissioner for further proceedings consistent with this opinion.

1. *Background.* The following facts found by the hearing officer and set forth in the exhibits are undisputed. On September 24, 1999, and again on October 1, 1999, the division received an anonymous letter stating that Anawan, as well as two other insurance agencies, had opened second locations contrary to a moratorium imposed by the Commonwealth. Anawan's second office was stated to be at 76 Shirley Avenue, Revere. An investigation by the division ensued, primarily by one Loney F. Bond. At some point Bond learned that Prum was doing business at 76

---

[2]The hearing officer also ordered that the plaintiffs cease and desist from the conduct that gave rise to the sanctions. Since it was agreed that the plaintiffs had ceased doing business with Prum as of December 31, 2001, that order appears to have been pro forma.

Shirley Avenue and although he had been licensed as a Massachusetts insurance broker on May 27, 1994 for a three-year period, he had not renewed his license.

On June 1, 2004, Bond wrote a letter to the plaintiffs stating that the division had received a complaint against Anawan "regarding placement of insurance policies through various carriers" and seeking, among other things, various documents relating to the appointment of past and present producers[3] or brokers. The letter specifically asked:

> "Have you ever employed Kuntthy Prum, if so state the dates of employment and provide the . . . information for this producer/broker? Determine the carrier(s) that he/she placed business with type and number of policies written."

On June 23, 2004, Michaels responded and notified the division of Anawan's prior insurance transactions with Prum, including a listing of all the commissions paid to him. Prior to the receipt of Michaels's June letter, the division did not know that Anawan had engaged in insurance business transactions with Prum.

On October 25, 2004, after receiving Michaels's response, the division issued an order to show cause alleging that the plaintiffs had violated § 177 of G. L. c. 175 and § 2 of G. L. c. 176D. A hearing pursuant to c. 176D, § 6, was held at which numerous exhibits were filed, but only one witness, Bond, testified. Thereafter, the hearing officer issued compendious findings accompanied by orders which were affirmed by the commissioner and by a Superior Court judge after the plaintiffs filed a complaint seeking review pursuant to G. L. c. 30A, § 14.

2. *Discussion.* a. *Statute of limitations.* The plaintiffs argue that this case is governed by the two-year statute of limitations, G. L. 260, § 5, set forth in the margin.[4] That statute, however, states that it does not apply to "any action set forth in section

---

[3] In 2002 the term "producer" replaced the former term "agent" or "broker" in G. L. c. 175, § 177. See St. 2002, c. 106, §§ 35-36.

[4] General Laws c. 260, § 5, as amended by St. 1975, c. 432, § 1, provides: "Actions for penalties or forfeitures under penal statutes, if brought by a person to whom the penalty or forfeiture is given in whole or in part, shall be commenced only within one year next after the offence is committed. But if

5A." Section 5A, also set forth in relevant part in the margin,[5] concerns actions arising on account of violations of laws "intended for the protection of consumers." We agree with the hearing officer that G. L. c. 175, § 177, set forth in relevant part below,[6] prohibiting payments to persons not duly licensed as brokers, is a statute intended to protect consumers, see *Deluty* v. *Commissioner of Ins.*, 7 Mass. App. Ct. 88, 92 (1979), and that G. L. c. 260, § 5A, is the applicable statute of limitations.

While arguing that § 5A does not apply, the plaintiffs claim that even if it is the appropriate statute of limitations, the cause of action accrued when the division received the anonymous letters in 1999; the claim for fines is, therefore, barred as too late. The hearing officer found, however, that the division proved that it did not know of the transactions between Anawan and Prum until June 23, 2004 and that:

> "the earliest date upon which any argument *possibly* can be made that the Division 'should have known' of the improper insurance business transactions between Anawan and Prum was not until sometime long after October 25, 2000. Under either set of facts, the Division has proved that fines for the pre-November 2000 proved violations are not barred by the statute of limitations set out in § 5A."

the penalty or forfeiture is given in whole or in part to the commonwealth, an action therefor by or in behalf of the commonwealth may be commenced only within two years next after the offence is committed. This section shall not apply to any action set forth in section five A."

[5]General Laws c. 260, § 5A, as amended through St. 1983, c. 636, § 29, provides: "Actions arising on account of violations of any law intended for the protection of consumers, including but not limited to the following . . . chapter one hundred and seventy-six D; . . . whether for damages, penalties or other relief and brought by any person, including the attorney general shall be commenced only within four years next after the cause of action accrues."

[6]General Laws c. 175, § 177, as in effect at the time of the plaintiffs' transactions with Prum provided in relevant part: "No company and no officer, agent or employee thereof, and no duly licensed insurance broker, shall, directly or indirectly, pay or allow or offer or agree to pay or allow compensation or anything of value to any person, excepting an officer of a domestic company acting under section one hundred and sixty-five, for acting in this commonwealth as an insurance agent or as an insurance broker, both as defined in section one hundred and sixty-two, who is not then duly licensed as an insurance agent of the company for which he assumes to act or as an insurance broker. . . . Whoever violates any provision of this section shall be punished by a fine of not less than twenty nor more than two hundred dollars."

We do not agree with the decision of the hearing officer that the § 5A statute of limitations was tolled. The discovery rule does not apply; the pre-November 2000 violations are barred. See *Unexcelled Chem. Corp.* v. *United States*, 345 U.S. 59, 65 (1953) ("breach of duty, not its discovery, that normally is controlling").

In *3M Corp.* v. *Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994), the court rejected a claim by the Environmental Protection Agency (EPA) that its claim for penalties " 'first accrued' when it discovered 3M's violations, not beforehand when the company committed those violations." The applicable statute of limitations in that case was 28 U.S.C. § 2462 which, in relevant part, provides:

> "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . ."

*3M Corp.* v. *Browner, supra* at 1455.

The court noted that the "discovery rule" is based on the idea that plaintiffs cannot have a tenable claim for damages unless and until they have been harmed. For this reason damage claims involving hidden injuries or illnesses are not considered as accruing until the harm becomes apparent. The rule promoted by EPA, however, was different; it was a "discovery of violation" rule having nothing to do with latent injuries and to which the rationale of the discovery of injury rule had no application. *Id.* at 1460.

We agree with the following reasoning of the court in *3M Corp.* v. *Browner, supra*:

> "The statute of limitations on which EPA would engraft its rule is aimed exclusively at restricting the time within which actions may be brought to recover fines, penalties and forfeitures. Fines, penalties and forfeitures, whether civil or criminal, may be considered a form of punishment. . . . In an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage.

Immediately upon the violation, EPA may institute the proceeding to have the penalty imposed."

Here, G. L. c. 175, § 177, as then in effect, see note 6, *supra*, provided that "[w]hoever violates any provision of this section shall be punished by a fine of not less than twenty nor more than two hundred dollars." As in the statute imposing penalties in the *3M* case, liability under § 177 attached at the time of the violation, and hence "one would expect this to be the time when the claim for the penalty . . . 'accrued.' " *3M Corp.* v. *Browner, supra* at 1461. Also like the statute of limitations in the *3M* case, G. L. c. 260, § 5A, is a general statute applicable in all civil penalty cases, and nothing in the language suggests that "the running of the limitations period turn[s] on the degree of difficulty an agency experiences in detecting violations." *3M Corp.* v. *Browner, supra.* We follow the rationale of that case[7] and conclude that no fines may be imposed for the period prior to October 25, 2000.

b. *Claim that violation must be made "knowingly."* In 2002, G. L. c. 175, § 177, was amended by St. 2002, c. 184, § 109, so that the last sentence thereof reads: "Whoever knowingly violates any provision of this section shall be punished by a fine of not less than $50 nor more than $500." Thus, in addition to increasing the fine, the word "knowingly" was inserted by the Legislature. The plaintiffs claim the amendment was a clarification of the previous version of the statute. We disagree.

Generally, and especially where the language of the applicable statute is clear and unambiguous, see *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 420 (1986), there is a presumption that a subsequent amendment indicates a legislative intention that the meaning of the statute changes. See *Brooks* v. *School Comm. of Gloucester*, 5 Mass. App. Ct. 158, 161 (1977); *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* v. *Falmouth*, 74 Mass. App. Ct. 444, 448 (2009). See also 1A Singer, Sutherland Statutory Construction § 22.1, at 245-246 (7th ed. 2009). There is nothing here which rebuts that presumption — there is no legislative history, appellate decision concerning this statute, or other evidence that supports the

---

[7]The *3M* court also referred to the legislative history of the statute buttressing its conclusion. See 17 F.3d at 1461-1462.

plaintiffs' claim. As indicated earlier, the requirement of a license is to protect the public. See *Deluty* v. *Commissioner of Ins.*, 7 Mass. App. Ct. at 90-91. Even in criminal statutes, scienter is not required for public welfare provisions. See discussion in *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 363-365 (1982).

The addition of the word "knowingly" is not a clarification or a mere fine tuning of the earlier provision, but is a significant change that affects substantive rights. Compare *Globe Newspaper Co.* v. *Beacon Hill Architectural Commn.*, 421 Mass. 570, 581 (1996). It was thus proper for the division to apply the statute in effect at the time of the plaintiffs' actions and to follow the general rule that

> "all legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action."

*Murphy* v. *Planning Bd. of Norwell*, 5 Mass. App. Ct. 393, 396 (1977), quoting from *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). See 1A Singer, Sutherland Statutory Construction § 22.36, at 406-414.

c. *Damages.* The hearing officer found the plaintiffs to be in violation both of G. L. c. 175, § 177, see note 6, *supra*, and G. L. c. 176D, § 2, inserted by St. 1972, c. 543, § 1, which provides:

> "No person shall engage in this commonwealth in any trade practice which is defined in this chapter as, *or determined pursuant to section six of this chapter to be, an unfair method* of competition or an unfair or deceptive act or practice in the business of insurance" (emphasis supplied).

Both statutes provide penalties. As indicated earlier, G. L. c. 175, § 177, as in force at the time of the plaintiffs' violations, provided that "[w]hoever violates any provision of this section shall be punished by a fine of not less than twenty nor

more than two hundred dollars." Section 7 of G. L. c. 176D, inserted by St. 1972, c. 543, § 1, provides that the commissioner may issue certain orders, and in addition, "whoever commits such an act or practice shall be punished by a fine of not more than one thousand dollars for each and every act or practice." Thus, the penalty under c. 176D, § 7, is far more onerous than the one under c. 175, § 177; not only is the amount of the fine much higher, but it can apply separately to each act, a matter not clear under c. 175, § 177. Although § 12 of c. 176D, inserted by St. 1972, c. 543, § 1, provides that the powers vested in the commissioner by the chapter "shall be additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts, and practices hereby declared to be unfair or deceptive," we consider that the commissioner should have applied the penalties applicable to c. 175, § 177. The only violations of c. 176, § 2, found by the hearing officer were those of c. 175, § 177. Section 7 of c. 176D is a statute of general application to all unfair practices in the insurance industry. Section 177 of c. 175, on the other hand, applies specifically to transactions with unlicensed brokers (now termed "producers"). "It is a self-contained statute, prescribing specific remedies for its violation." *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707, 711 (1979) (discussing G. L. c. 93A, § 2[*a*], and c. 93B, § 3[*a*]). Although c. 175, § 177, was originally enacted prior to c. 176D, § 7, it was amended in 2002, after c. 176D, § 7, and the Legislature still provided much lower penalties than in c. 176D, § 7.

> "The two statutes may overlap in their coverage, but in the case of a conflict, the provisions of the specific statute must govern. See *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118-119 (1973), and cases cited. To hold otherwise would be to overlook [the limitations in § 177.]"

*Ibid.*[8] Compare *Commonwealth* v. *John G. Grant & Sons*, 403 Mass. 151, 156 (1988) (where one penalty provision was no more specific than the other).

---

[8]We note that the hearing officer imposed penalties with respect to each policy and not for each commission payment to Prum. In assessing the fines, the hearing officer noted that the plaintiffs did not act with a complete disregard for their responsibilities: they required Prum to send them by facsimile transmis-

We vacate the judgment, and order that a new judgment enter in the Superior Court remanding the matter to the commissioner to impose fines under G. L. c. 175, § 177.[9] We do not intimate what fines should be imposed on remand, but they should be assessed pursuant to c. 175, § 177, and not c. 176D, § 7, and they should not include fines for violations occurring prior to October 25, 2000.

*So ordered.*

sion a copy of his license before commencing business with him, and they informed the division of their insurance business transactions with Prum promptly after they were asked about their connection with him.

[9]We need not consider the portion of the decision ordering the plaintiffs to cease and desist violation of the statute, as all parties agree they are no longer in violation. See note 2, *supra.*