Krupp, Peter B., J.
This case arises out of the adoption of a bylaw by the Town of Wayland (“the Town”) requiring a municipal determination that a utility is in compliance with state and federal law before the utility may apply pesticides or herbicides within a right of way in the Town. After the Attorney General concluded that the Pesticide Control Act, G.L.c. 132B, preempts the bylaw, the Town filed this action for certiorari. The Town now moves for judgment on the pleadings. For the following reasons, the Town’s motion is DENIED.
BACKGROUND
Utility companies need to control the growth of vegetation within their rights of way. To do so, among other methods, they may seek to use chemical herbicides. The use of such herbicides is controlled extensively by federal and state statutes and regulations.
Notwithstanding—and fully cognizant of—the comprehensive federal and state structure for regulating herbicide use, at a town meeting on October 3, 2012, voters of the Town adopted a general bylaw (“bylaw”) to “establish the procedures by which” its Board of Health (“BOH”) “may determine whether a proposed application of a pesticide, plant regulator, or herbicide by a utility upon or within its rights of way within Wayland is to be conducted in accordance with applicable state and federal requirements.” Chapter 118, § 118-1.[1] Adoption of this bylaw was animated by the legitimate local concerns for “protecting the health, environment and safety of the citizens of the Town” and safeguarding “the purity of its drinking water supply.” Id.
The bylaw does not expressly seek to impose additional substantive regulatory standards for the use of pesticides, plant regulators or herbicides by utilities in their rights of way in the Town. Instead, the bylaw establishes a mechanism for municipal review after extensive submissions by a utility to determine whether the utility is in compliance with the existing state and federal regulatory requirements for use of such chemicals.
Specifically, §118-2 provides that “[n]o person shall distribute, apply, handle, dispose of, discard or store any pesticide, . . . including plant regulators, or herbicides, . . . upon any utility right-of-way, unless and until it has received an [sic] notice of determination from the Wayland Board of Health.” The bylaw then sets up a mechanism for a utility that intends to use pesticides, plant regulators, or herbicides to notify the *25 BOH and provide detailed submissions, some of which are not required under state or federal regulation (§ 118-3(a)-(n)); for the BOH to hold “a hearing at which the utility shall appear and present evidence that it has complied and will comply with applicable state and federal law” (§118-3) and at which “any resident of the Town” or any “other interested party” may introduce evidence (§§118-3, 118-4); for the BOH to render a decision[2] (§118-4); and for the utility to remedy to the BOH’s satisfaction any “deficiencies” the BOH determines to exist (§§118-4, 118-5).
On October 26, 2012, the Town Clerk submitted the bylaw to the Attorney General for review pursuant to G.L.c. 40, §32. On February 22, 2013, the Attorney General issued a written decision disapproving the bylaw on the grounds that it is preempted by the Pesticide Control Act and the related right-of-way management regulations at 333 CMR §11.00.
DISCUSSION
For a bylaw to take effect, the Attorney General must either approve the bylaw or fail to act on a request for approval within ninety (90) days. G.L.c. 40, §32. A certiorari action is the proper means to seek review of the Attorney General’s disapproval of a bylaw. Town of Reading v. Attorney General, 362 Mass. 266, 269-70 (1972). “Certiorari allows a court to correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.” Sheriff of Plymouth County v. Plymouth County Pers. Bd., 440 Mass. 708, 710 (2004) (internal quotations and alterations omitted).
The Attorney General argues that the bylaw is preempted by the Pesticide Control Act. “Any city or town may, by the adoption, amendment or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court." G.L.c. 43B, §13 (emphasis added). In determining whether a local bylaw is “inconsistent” with a general law, courts require that “(t]he legislative intent to preclude local action must be clear.” Bloom v. City of Worcester, 363 Mass. 136, 155 (1973). Absent an express stated intent by the Legislature, a legislative intent to bar local bylaws may be inferred from the circumstances if the legislation deals with a subject comprehensively. Id. A legislative intent to preempt may also be inferred if the Legislature explicitly limits the manner in which municipalities may act on a subject. Id. The mere existence of legislation on a subject, however, is not a bar to local bylaws, and a bylaw is not inconsistent with state legislation if the legislative purpose can be achieved. Id. at 156. Local regulations are barred if they would clearly frustrate a statutory purpose. Town of Wendell v. Attorney General (“Wendell"), 394 Mass. 518, 528 (1985).
The Pesticide Control Act provides for the creation of a pesticide control board with the department of food and agriculture, which is now known as the Massachusetts Department of Agricultural Resources (“MDAR”), G.L.c. 132B, §3, as well as a subcommittee of the pesticide board “charged with the responsibility of registering all pesticides for use in the commonwealth.” Id. §3A. “Pesticide” is defined as “a substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, and any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant.” Id. §2.
The Pesticide Control Act provides that no utility may spray pesticides “without first notifying . . . the mayor, city manager or chair of the board of selectmen and the conservation commission in the city or town where such application is to occur 21 days before such spraying . . . and without first publishing conspicuous notice in at least one newspaper of general circulation in each city or town where such land lies at least 48 hours prior to such spraying.” Id. §6B.
MDAR’s regulations governing management of rights of way are designed “to establish a statewide and uniform regulatory process which will minimize the uses of, and potential impacts from herbicides in rights-of-way on human health and the environment while allowing for the benefits to public safety provided by the selective use of herbicides.” 333 CMR §11.01. They require any applicant intending to use pesticides to submit a five-year vegetation management plan (“VMP”) and a yearly operational plan (“YOP”). Id. §§11.05, 11.06. The VMP and YOPs must contain detailed information to account for sensitive areas and minimize the use of pesticides and herbicides. Id. Under the state regulations, municipalities must receive notice of both the VMP and YOPs and be given an opportunity to comment. Id. Following the public comment period, MDAR may approve, disapprove, or modify the VMP or YOPs. Id.
In Wendell the Supreme Judicial Court held that there was no clear legislative intent to preempt local bylaws under an earlier version of the Pesticide Control Act.[3] The Court stated that “nothing in the act [ ] explicitly authorizes local regulation of pesticide applications, and, more importantly, for the purposes of this case, we find nothing in the act that explicitly forbids local regulation.” Id. at 526. The SJC also noted that the notice requirement of §6B “suggests legislative recognition of a local interest in the proper application of herbicides on a utility's right-of-way, but §6B offers nothing to guide us on the question whether the Legislature impliedly intended to forbid local regulation.” Id. at 527.
After Wendell the Legislature amended the Pesticide Control Act in 1994 to make clear that the “exclusive authority in regulating the labeling, distribution, *26 sale, storage, transportation, use and application, and disposal of pesticides in the commonwealth shall be determined by this chapter.” G.L.c. 132B, §1, as amended by St. 1994, c. 264, §1.[4] This clear language demonstrates a legislative intent to occupy the field at the state level in the regulation of the use and application of “pesticides,” as that term is defined in G.L.c. 132B,§2.
“Generally, and especially where the language of the applicable statute is clear and unambiguous, there is a presumption that a subsequent amendment indicates a legislative intention that the meaning of the statute changes.” Anwan Ins. Agency, Inc. v. Division of Ins., 76 Mass.App.Ct. 447, 452 (2010) (internal citations omitted), aff'd, 459 Mass. 592 (2011). An amendment may also serve simply to clarify a statute’s meaning. ‘The extent to which an amendment may properly be used to aid in the interpretation of the original statute turns on circumstances.” DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 103 (1983).
Here, the Legislature was likely aware of the decision in Wendell when it amended the Pesticide Control Act. The 1994 amendment did not impose any additional regulatory standards, but simply clarified the Legislature’s intent to make the state statute and the regulations adopted thereunder the “exclusive authority in regulating the . . . use and application ... of pesticides in the commonwealth,” G.L.c. 132B, §1 (emphasis added), which was a matter left open by the decision in Wendell See Commonwealth v. Colturi, 448 Mass. 809, 812 (2007) (“We also presume that when the Legislature amends a statute it is aware of the prior state of the law as explicated by the decisions of this court” (internal quotations omitted)). The amended language of the Pesticide Control Act provides the clear legislative intent to bar local regulation that the SJC found missing in Wendell To construe the amended language otherwise would render it meaningless. See Anwan Ins. Agency, 76 Mass.App.Ct. at 452.
The Pesticide Control Act and its regulations also explicitly provide for the involvement of municipalities prior to the use of pesticides by utilities. See G.L.c. 132, §6B; 333 CMR §§11.05, 11.06. Where the statute contains a clear intent to bar local regulation and provides procedures for municipal involvement, the implication is that such procedures are intended to be the only means for municipal involvement. See St. George Greek Orthodox Cathedral of Western Mass., Inc. v. Fire Dep’t of Springfield, 462 Mass. 120, 127 (2012) (finding an intent to preempt local building codes where the statute “establish[ed] a mechanism through which a municipality may request that the board allow it to utilize more restrictive standards than those required by the code”).
The bylaw also has the potential to upset the timing calibrated at the state level for approval of pesticide use. Nothing in the bylaw limits how much time the BOH has to issue a notice of determination, see, supra, at 2-3 n.2, unlike the Pesticide Control Act and the related regulations, which require that a decision be made within a prescribed time period. See, e.g., 333 CMR §§11.05(4), 11.06(4). Even if the BOH ultimately approves an application, it may not be sufficiently timely to meet the pesticide application schedule. If the BOH denies a pesticide application, the utility would have to file an amended application with the BOH or seek recourse through MDAR, causing delays; or face penalties and fines for violation of the bylaw.[5] Permitting the bylaw would frustrate the state regulations’ stated purpose of providing a “statewide and uniform regulatory process.” See Wendell, 394 Mass. at 528. The Legislature has assigned responsibility for regulating the use of pesticides to MDAR. Allowing a local agency to exercise an additional layer of regulatory review would allow the municipality improperly to “second guess” MDAR’s decision.
The Town argues that the bylaw is not preempted because the bylaw does not empower the BOH to regulate pesticides or to independently enforce the provisions of the Pesticide Control Act or the state regulations. However, §118-2 of the bylaw prohibits the distribution or use of a pesticide until a person has received a notice of determination from the BOH. As a practical matter, a bylaw that purports to prohibit the use of a pesticide without approval can hardly be construed as something other than a pesticide regulation, nor are the procedural hurdles imposed by the bylaw de minimus.
For these reasons, the bylaw is preempted by the Pesticide Control Act and state regulations.
ORDER
Plaintiffs Motion for Judgment on the Pleadings (Docket #5) is DENIED. Judgment shall enter for the Attorney General.

The proposed bylaw, which would appear as Chapter 118 of the Code of the Town of Wayland, is reproduced in the Record of Proceedings before the Attorney General filed in this case. Its provisions are cited by section as “§118-_.”

Although the bylaw does not require the BOH to make a determination within a defined period after the hearing, at oral argument on this motion, the Town’s counsel represented that it was his interpretation that the BOH would have to render its decision at the hearing. While that interpretation is not a necessary one under the language of the bylaw, I take that representation as binding on the Town. Even assuming the BOH is required to render its decision at the hearing, the procedures set up under the bylaw may well delay application by a utility of pesticides, plant regulators or herbicides for a significant period. The BOH hearing is designed under the bylaw not to occur any sooner than 21 days before the proposed beginning of the application of the pesticide, plant regulator or herbicides (§118-3). If at its 21-day hearing the BOH determines that there are “deficiencies” in the utility’s proposed application, the utility may request a further hearing before the BOH to demonstrate “that it has remedied the deficiencies outlined by the” BOH. The BOH then has 14 days to schedule another hearing (§118-5).

While the SJC did not find explicit preemption under the Pesticide Control Act, it held that the bylaw in question in *27 Wendell was preempted because it would frustrate the purposes of the Pesticide Control Act. 394 Mass, at 529.

The full text of the 1994 amendment states: ‘The purpose of this chapter is to conform the laws of the commonwealth to the Federal Insecticide, Fungicide, and Rodenticide Act, Public Law 92-516, as amended, and the regulations promulgated thereunder and to establish a regulatory process in the commonwealth. The exclusive authority in regulating the labeling, distribution, sale, storage, transportation, use and application, and disposal of pesticides in the commonwealth shall be determined by this chapter.” G.L.c. 132B, §1.

The bylaw imposes a $300 fine for a violation and provides that each day a violation continues constitutes a separateviolation (§118-6.2).